[Civ. No. 15101.   Second Dist., Div. Three.   Apr. 16, 1946.]

ELIZABETH LANGDON, Appellant, v. LANSING SAYRE,
Respondent.

Lorrin Andrews for Appellant.

Claire T. Van Etten for Respondent.

DESMOND, P. J.—The plaintiff in this case appeals from a judgment by which her action for breach of promise of marriage was dismissed upon a general demurrer being sustained

without leave to amend. Her complaint was framed under two counts, the first alleging that in September of 1943 the defendant mailed his offer of marriage which was accepted by her in writing at Cincinnati, Ohio. For defendant's breach of this agreement she sought damages. In the second count the plaintiff alleged that on October 27, 1943, she and the defendant entered into an agreement to marry which the defendant repudiated on October 16, 1944. Upon the facts alleged in the second count she asked that the court decree "within a reasonable time to be fixed by said Court that said defendant marry said plaintiff as in accordance with his proposal of marriage," praying that the agreement to marry be specifically performed forthwith or that the defendant respond in damages in a substantial sum of money in the event of his failing to carry out the order of the court. Although each count undertakes to state a separate cause of action it is apparent that they both relate to and are founded upon a claimed breach of promise to marry.

By enactment of section 341.5, Code of Civil Procedure, the Legislature provided in 1939 that an action for criminal conversation, seduction of a person over the age of legal consent, alienation of affections or breach of promise of marriage must be commenced within sixty days after the statute became effective. The present action was filed on May 3, 1945. With the exception of such of the causes above named as might be filed within the sixty-day limit, all suits of the character mentioned were barred by the enactment in 1939 of Civil Code section 43.5. It reads as follows: "No cause of action arises for: (a) Alienation of affection. (b) Criminal conversation. (c) Seduction of a person over the age of legal consent. (d) Breach of promise of marriage." The states of Alabama, Indiana, Illinois, Michigan, New Jersey, New York, Pennsylvania, Colorado and Massachusetts had adopted similar statutes beginning in the year 1935.

In the year following the enactment of the California statute, a writer in 28 California Law Review 444 said, "It may perhaps be suggested, as contended recently in a similar situation in New York, that in abolishing so-called 'heart-balm' suits, that is, suits predicated upon breach of promise to marry, alienation of affections, and criminal conversation, the legislature has unreasonably and therefore unconstitutionally interfered with valuable rights recognized by the common law as springing from the relations and the contracts involved.

As pointed out by the New York Court of Appeals in answer to a similar contention, such arguments would seem unfounded due to the fact that: the marriage contract is not an ordinary contract; the state is a 'third interested party' in such a contract and in the consequent marriage status; the constitutional protection of contracts against legislative interference does not apply to marriage contracts; the legislature in dealing with the subject of marriage has plenary power; and the rights of the husband in the wife's affections and society are not 'property' within the due process clause.'' A footnote on page 445 refers to two New York cases, ''*Fearon* v. *Treanor* (1936), 272 N.Y. 268, 5 N.E.2d 815, *appeal dismissed,* (1937) 301 U.S. 667 [57 S.Ct. 933, 81 L.Ed. 1332] (upholding abolition of suits for breach of promise to marry); *Hanfgarn* v. *Mark* (1937), 274 N.Y. 22, 8 N.E.2d 47, *appeal dismissed,* (1937) 302 U.S. 641 [58 S.Ct. 57, 82 L.Ed 498] (upholding the abolition of actions for alienation of affections and for criminal conversation).'' The dismissal of each of these cases was entered by the Supreme Court of the United States ''for the want of a substantial Federal question.''

In an article published in 1939, 13 Southern California Law Review 37, under the caption ''The 'Anti-Heart Balm' Statute,'' the following comment appears, ''The actions for breach of promise to marry, seduction and alienation of affections have long been the target of criticism. It has been urged, with much vigor: that they were more the weapons of a blackmailer than the shield of an appealing victim; that they were anomalous attempts to protect, by law, duties and obligations unsuited to litagious procedures; and that, as they had developed, they permitted recoveries of damages out of all proportion to the real injuries involved. Finally, in 1935, Indiana, by statute, abolished them entirely. Other States have since followed this example, and now the California Legislature has joined the group of reforming States. . . . The original of such statutes were, as might have been expected, subject to immediate attack on constitutional grounds —the chief point being that it was unconstitutional to abolish entirely all remedy for a common law cause of action. However, when the New York statute came before the Court of Appeals, that court held that the special nature of the marriage relation, and the great public interest therein, gave to the Legislature a plenary power, in its discretion, to abolish entirely the common law causes of action,'' citing *Fearon* v.

*Treanor, supra,* 272 N.Y. 268 [5 N.E.2d 815, 109 A.L.R. 1229] (1936), and *Hanfgarn* v. *Mark, supra,* 274 N.Y. 22 [8 N.E.2d 47] (1937). The material on this topic was prepared by Professor Robert Kingsley of the University of Southern California, and the footnotes on pages 37 and 38 indicate by citations to reports and many legal publications the extensive scope of his inquiry.

In the instant case we see the statute attacked upon constitutional grounds. Appellant claims that section 43.5 violates section 1, article I of the Constitution of California in subjecting "the happiness of every unmarried adult to the caprice or deceit of whoever arbitrarily proves false to the most solemn and sacred of obligations." A further contention is that this new statute "violates section 16 of Article I of the Constitution and impairs the obligation of contracts." It is claimed also that it violates section 11 of article I, which reads that "All laws of a general nature shall have a uniform operation," and also section 21 of the same article, providing that "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." A final claim is that the section infringes upon section 25 of article IV, which provides among other things that "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Nineteenth—Granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity."

Appellant argues that section 43.5 "subjects the happiness of every unmarried adult to the caprice or deceit of whoever arbitrarily proves false to the most solemn and sacred of obligations," and she has thereby been deprived of the right to pursue and obtain happiness which is guaranteed to her by article I, section 1, of the Constitution. We can understand that plaintiff feels aggrieved at having failed in her pursuit of happiness, but if damages would assuage her grief, that healing agent, we think, is not one which is guaranteed to her by the Constitution.

The second contention of appellant that the obligation of contracts is violated by section 43.5 was given special consideration in the case of *Fearon* v. *Treanor, supra,* which has been published with an annotation in 109 American Law

Reports at page 1229. It was there stated (p. 1232) : "Marriage is not a contract within the meaning of the provision of the Federal Constitution which prohibits the impairment by the States of the obligation of contracts (Const. U.S. art. 1, § 10, cl. 1). *Maynard* v. *Hill, supra* [125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.ed. 654]. The Domestic Relations Law provides in great detail when and how marriage may be entered into, how the relation may be dissolved, the grounds for divorce and annulment, the rights and liabilities of husband and wife, the age at which the relation may be entered into and the class of persons who are disqualified from marrying.

"From time immemorial the state has exercised the fullest control over the marriage relation, justly believing that happy, successful marriages constitute the fundamental basis of the general welfare of the people. Our people believe that marriage should be entered into freely as a matter of choice, not through fear, restraint, or compulsion." It is also stated in the same opinion (p. 1231) : ". . . the Legislature in dealing with the subject of marriage has plenary power." Here will be found also various quotations substantiating the decision of the court upon constitutional questions and a reference to Prof. Schouler's remarks, cited with approval in *Goodard* v. *Westcott*, 82 Mich. 180, 188 [46 N.W. 242, 244], which it seems appropriate for us at this time to requote in part (109 A.L.R. 1232) : " 'The marriage state ought not to be lightly entered into. It involves the profoundest interests of human life, transmitting its complex influences direct to posterity, and invading the happiness of parents and near kindred. . . . From such a stand-point, we view the marriage engagement as a period of probation, so to speak, for both parties,—their opportunity for finding one another out; and if that probation results in developing incompatibility of tastes and temperament, coldness, suspicion, and incurable repugnance of one to the other, though all this may impute no vice to either, nor afford matter for judicial demonstration, duty requires that the match be broken off.' "

The other constitutional provisions upon which appellant relies prohibit legislation in behalf of favored individuals or classes, but considering those provisions we do not find that section 43.5 runs counter to any of them since it applies equally to all persons and deals with no particular class.

We observe but are not seriously impressed by the

contention of appellant that section 43.5 is contrary to sound public policy, for that argument seems not to have prevailed where similar statutes have been questioned elsewhere, nor was it sustained in the recent California case, *Thorne* v. *Macken* (1943), 58 Cal.App.2d 76 [136 P.2d 116]. There the court said (p. 81):

"While the Legislature of this state in enacting section 43.5 *supra,* did not expressly declare that the actions proscribed thereby are contrary to public policy, we doubt not that they constitute such a declaration.

"It is said in 12 Am.Jur. 668, regarding the sources of public policy, that 'Where there are constitutional or statutory provisions, they govern as to what is the public policy. Where the lawmaking power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the statute enacts.' " The opinion cites on the same subject, *United States* v. *Trans-Missouri Freight Association,* 166 U.S. 290, 340 [17 S.Ct. 540, 41 L.Ed. 1007]; *Young* v. *Young,* 236 Ala. 627 [184 So. 187]; and *A. B.* v. *C. D.,* 36 F. Supp. 85.

The judgment is affirmed.

Shinn, J., and Wood, J., concurred.