(No. 48075.—

JEAN MARY WRIGHT *et al.,* Appellees, v. CENTRAL DU PAGE HOSPITAL ASSOCIATION *et al.,* Appellants.

*Opinion filed May 14, 1976.*

UNDERWOOD and RYAN, JJ., concurring in part and dissenting in part.

Howard & French, of Chicago (Richard G. French and Michael C. Kominiarek, of counsel), for appellant Central Du Page Hospital Association.

Frederic O. Floberg, of Chicago (William D. Serritella, Michael J. Critelli, and Ross, Hardies, O'Keefe, Babcock & Parsons, of counsel), for appellant Dr. John A. Heitzler.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Patricia Rosen, Assistant Attorneys General, of counsel), for appellant Robert B. Wilcox, Director of Insurance.

Nat P. Ozmon, Leonard M. Ring and William J. Harte, of Chicago (Laurence T. Stanner, Ralph L. Brill, Karla Wright and Timothy M. O'Brien, of counsel), for appellee Jean Mary Wright.

Joseph Keig, Jr., and Bennet B. Harvey, Jr., both of Chicago (William G. Schopf, Jr., John A. McLees, and Keck, Cushman, Mahin & Cate, of counsel), for appellee Hartford Casualty Insurance Co.

Wildman, Harrold, Allen & Dixon, of Chicago (Max E. Wildman, James P. Dorr and Kay L. Schichtel, of counsel), for appellee Medical Protective Co.

Wayne A. Lenczycki, of Skokie, and Thomas G. Baffes and Richard J. Daley, both of Chicago, for *amicus curiae* Protective Medical Association of Illinois.

Burditt and Calkins, of Chicago (Richard E. Favoriti, Tom Scheuneman and Michael V. Hasten, of counsel), for *amici curiae* Illinois State Medical Society and Jerry M. Ingalls.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In separate actions filed in the circuit court of Cook County, Hartford Casualty Insurance Company (hereafter Hartford) and The Medical Protective Company (hereafter Medical Protective) sought declaratory judgments holding invalid section 401a of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 1013a). The cases were consolidated, and the circuit court entered a declaratory judgment holding the statute unconstitutional. Robert B. Wilcox, Director of Insurance (hereafter Director), named as a party defendant in both cases, and the Illinois State

Medical Society and Jerry M. Ingalls, described as a physician, president of the Illinois State Medical Society and as representative of a class of Hartford policyholders, named as parties defendant in the Hartford suit, appealed. Rule 302(a) (58 Ill.2d R. 302(a)).

In an action filed in the circuit court of Cook County plaintiff Jean Mary Wright (hereafter plaintiff) sought to recover damages from defendants Central Du Page Hospital Association, Dr. John Heitzler, American Hospital Supply Corporation and V. Mueller & Company for personal injuries suffered while confined to the defendant hospital as a patient of the defendant Dr. Heitzler. In her complaint, as amended, she sought a declaratory judgment that sections 58.2 through 58.10 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, pars. 58.2 through 58.10), section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1), and section 4 of Public Act 79—960 (Ill. Rev. Stat. 1975, ch. 70, par. 101) were unconstitutional. The circuit court entered a declaratory judgment holding sections 58.2 through 58.10 of the Civil Practice Act and section 4 of Public Act 79—960 (Ill. Rev. Stat. 1975, ch. 70, par. 101) invalid and found that there was no just reason to delay enforcement or appeal. Defendants Central Du Page Hospital Association and Dr. Heitzler appealed. (Rule 302(a).) The circuit court ordered this case consolidated with the previously consolidated cases filed by Hartford and Medical Protective and the matter came to this court as a single appeal.

The statutory sections declared unconstitutional are contained in "An Act to revise the law in relation to medical practice." (Pub. Act 79—960, approved September 12, 1975, effective November 11, 1975.) Section 1 of the Act added sections 58.2 through 58.10 to the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, pars. 58.2 through 58.10); section 2 amended section 21.1 of "An Act in regard to limitations" (Ill. Rev. Stat. 1975, ch. 83, par. 22.1); section 3 added section 401a to the Illinois

Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 1013a), and section 4 limited the maximum amount recoverable "on account of injuries by reason of medical, hospital or other healing art malpractice" (Ill. Rev. Stat. 1975, ch. 70, par. 101).

We consider first the contentions of the parties with respect to the sections added to the Civil Practice Act. Section 58.2 provides that sections 58.3 through 58.10 shall apply to all cases in which the "plaintiff seeks damages on account of injuries sustained by reason of medical, hospital or other healing art malpractice" and "shall not apply to any other cases." Section 58.3 requires the circuit court, "no sooner than 120 days nor later than one year after the parties are at issue on the pleadings" to order the convening of "a medical review panel to which the case shall be assigned for hearing and determination." The medical review panel is to consist of one circuit judge, one practicing physician and one practicing attorney.

Section 58.4 provides that the panels shall be chosen from rosters maintained by the chief judge of each judicial circuit. The rosters are to include at least five circuit judges, at least 20 practicing physicians licensed to practice in Illinois who are willing to serve on panels and are recommended by a recognized medical society, and at least 20 practicing attorneys licensed to practice in Illinois who are willing to serve on medical review panels and whose names have been provided by a bar association having membership in the circuit. It provides for assignment to panels on a rotation basis from these rosters. Section 58.5 permits selection of panels, by unanimous agreement of the parties, from physicians and attorneys who may or may not be on the roster and provides for the selection, by unanimous agreement of the parties, of a circuit judge to serve on the panel. (Ill. Rev. Stat. 1975, ch. 110, par. 58.5(1).) Section 58.5 also provides the method of selection of the panel other than by unanimous agreement of the parties, the method and reasons for disqualification

of a panel member, and the acceptance of the assignment and disclosure of any conflict of interest by the panel members.

Section 58.6 is concerned with procedure. Proceedings before the panel are to be "adversary, and each party may call and cross examine witnesses and introduce evidence as at a trial in the circuit court." The panel has the power of subpoena, "to be exercised as in the circuit court," and it "may call witnesses, examine evidence, call for additional or particular evidence, and may examine or cross examine witnesses as it may determine to be appropriate." The circuit judge is to preside over the proceedings and decide procedural and evidentiary issues, and the proceedings may be conducted in any county in the judicial circuit, as determined by the panel. Section 58.7 provides that the panel shall make a "determination on the issue of liability and, if liability is found, on the issue of fair and just compensation for damages." The determinations of the panel are to be made in a written opinion stating its conclusions of fact and conclusions of law, and a dissenting member may file a written dissent.

Section 58.8 governs the effect of a decision of the panel. If the parties agree in writing to be bound by the determination of the panel, its decision is binding and conclusive, and judgment may be entered thereon. If the parties do not agree to be bound by the panel's determination and the panel's decision is unanimous, a party must reject the decision in writing within 28 days of receipt of service of the written opinion or be deemed to have accepted it. Whenever the parties have not unanimously agreed to be bound by the determination of the panel and have not unanimously accepted the determination, the panel judge is to conduct a pretrial conference and the case is to proceed to trial as in any other civil case. The determination of the panel is not admissible at any subsequent trial in the circuit court.

Section 58.9 provides that the expenses of the panel

shall be apportioned among the parties equally, except that a party who rejects a unanimous decision of the panel and who fails to prevail on a trial of the case may, pursuant to section 41 of the Civil Practice Act, on motion and hearing, be taxed with the reasonable attorney's fees of the prevailing party, the costs of the panel and the costs of the trial. Section 58.10 authorizes this court to adopt supervisory rules not inconsistent with the statutory provisions.

The parties have briefed and argued a number of questions, and briefs, urging reversal of the judgment, have been filed by *amici curiae* Illinois State Medical Society and its president, and by an *amicus* calling itself the Protective Medical Association of Illinois, but not otherwise described or identified. In a section of their brief, headed "Interest of the Amici Curiae: The Health Care Crisis," *amici* Illinois State Medical Society and its president describe the "rapid and disproportionate rise in malpractice claims and high dollar awards and settlements" and argue that "While concededly, it is an initial move and hardly the last, nor should it be, Public Act 79—960 represents a reasonable response to a problem confronting the vast majority of the people of the State of Illinois."

Although the circuit court found the legislation concerning the medical review panels constitutionally defective for a number of reasons, we need consider only whether it correctly held that it was violative of article VI, sections 1 and 9, of the Illinois Constitution for the reason that it "vests essentially judicial functions in nonjudicial personnel" and of article I, section 13, for the reason that its provisions "impair and violate plaintiff's constitutionally protected interests in trial by jury."

Article VI of the Constitution, in pertinent part, provides that "The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts" (section 1), and that the circuit court shall have "original jurisdiction of all justiciable matters *** [and] shall have such power

to review administrative action as provided by law" (section 9). Under section 58.6 of the Civil Practice Act proceedings before the panel are to be adversary and witnesses are to be examined and evidence introduced "as at a trial in the circuit court." Section 58.6 also provides that the circuit judge member of the medical review panel "shall preside over all proceedings of the panel and shall determine all procedural issues, including matters of evidence." But as to other issues, both legal and factual, the power and function of the lawyer and physician member of the panel are the same as that of the judge. Furthermore, the powers of the judge concerning the determination of "matters of evidence" are diluted by the provision that "The law of evidence shall be followed, except as the panel in its discretion may determine otherwise." (Par. 58.6.) Section 58.7 provides that "The panel shall make its determination according to the applicable substantive law," and by its terms, the lawyer and physician member are vested with authority, equal to that of the judge, to determine and apply the "substantive law."

The application of principles of law is inherently a judicial function (*People v. Bruner* (1931), 343 Ill. 146) and article VI, section 1, of the Constitution vests the exclusive and entire judicial power in the courts. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145.) Under these statutory provisions the physician and lawyer member of the medical review panel are empowered to make conclusions of law and fact "according to the applicable substantive law" (par. 58.7) over the dissent of the circuit judge. This, we hold, empowers the nonjudicial members of the medical review panel to exercise a judicial function in violation of sections 1 and 9 of article VI of the Constitution.

We consider next whether the circuit court correctly held that these statutes violate article I, section 13, of the Constitution, which provides that "The right of trial by

jury as heretofore enjoyed shall remain inviolate." Defendants argue that "The right to trial by jury remains untrammelled" and that "the requirement for prior submission to the medical review board does not violate either litigant's constitutional guarantee to a jury trial."

The report of the Constitutional Convention Committee on the Bill of Rights stated that the Committee voted to submit a proposal in the form of section 13 of article I and went on to say:

> "After considering numerous proposed exceptions to the right of trial by jury the Committee concluded that all were inappropriate. One proposal would have authorized the General Assembly to modify the right to trial by jury 'in suits between private persons for damages for death or injury to persons or property.' The Committee adopted such language on its initial vote, for the purpose of giving the General Assembly authority to prescribe new methods of determining facts in civil cases in order to combat congestion and other problems in the courts. Upon reconsideration the Committee concluded that such an exception was unjustified because these objectives could be sought by administrative and legislative reforms without diluting fundamental jury trial guarantees." 6 Record of Proceedings, Sixth Illinois Constitutional Convention 27 (hereafter Proceedings).

An amendment was approved (3 Proceedings 1432) and Proposal No. 4 of the Committee on Style, Drafting and Submission (6 Proceedings 204) contained the following:

> "Section 9.  Trial by Jury
>
> The right of trial by jury as heretofore enjoyed shall remain inviolate, except that in civil cases the General Assembly by law may provide for juries of not less than six nor more than twelve and for verdicts by not less than three-fourths of the jurors."

The debates (3 Proceedings 1426-1432; 4 Proceedings 3640) reflect that all efforts to amend the proposal of the Committee on the Bill of Rights were ultimately defeated and section 13 was approved by the Convention. The Explanation to the voters (7 Proceedings 2686) stated:

"This section is the same as Article II, Section 5 of the 1870 Constitution, except that it deletes an out-dated reference to the office of justice of the peace, which has been abolished."

In *People v. Lobb* (1959), 17 Ill.2d 287, 298-99, the court said:

"Section 5 of article II of the Illinois constitution provides that 'The right of trial by jury as heretofore enjoyed, shall remain inviolate.' We have construed these words to mean the right of a trial by jury as it existed under the common law and as enjoyed at the time of the adoption of the respective Illinois constitutions. [Citations.] The right of trial by jury as it existed at common law is the right to have the facts in controversy determined, under the direction and super-intendence of a judge, by the unanimous verdict of twelve impartial jurors who possess the qualifi-cations and are selected in the manner prescribed by law. [Citations.]

\* \* \*

The constitutional guarantee of the right of trial by jury is not so inelastic as to render unchangeable every characteristic and specifica-tion of the common-law jury system. Flexibility for the adjustment of details remains, as long as the essentials of the system are retained."

Because we have held that these statutes providing for medical review panels are unconstitutional, it follows that the procedure prescribed therein as the prerequisite to jury trial is an impermissible restriction on the right of trial by jury guaranteed by article I, section 13, of the Illinois Constitution. In so holding, however, we do not imply that a valid pretrial panel procedure cannot be devised.

We note that although the order entered by the circuit court holds sections "58.2 through 58.10 and each of them" unconstitutional no specific reference is made

therein to section 58.2a, and the parties have neither briefed nor argued the question of its validity. Section 58.2a provides that "Any contract or agreement signed by any person, prior to or as a condition of such person receiving medical treatment in any form, which releases from liability any physician, hospital or other health care provider for any malfeasance, misfeasance or nonfeasance in the course of administering any medical treatment or service is void and against the public policy of the State of Illinois." This record presented no issue in the circuit court or on appeal concerning this section of the statute, and we have not considered, nor do we express any opinion concerning, its validity. If it was the intent of the circuit court's order to hold section 58.2a invalid, the judgment, to that extent, is vacated.

We consider next the provision of section 4 of Public Act 79—960 (Ill. Rev. Stat. 1975, ch. 70, par. 101) that the maximum recovery "on account of injuries by reason of medical, hospital or other healing art malpractice" shall be $500,000. The circuit court held that the monetary limitation on a medical malpractice recovery constituted special legislation in violation of section 13 of article IV of the Illinois Constitution, denied plaintiff equal protection and due process of law under the Federal and Illinois constitutions and denied her a full remedy for injuries to her person in violation of section 12 of article I of the Illinois Constitution.

Plaintiff argues that by denying recovery for loss and damage in excess of $500,000 the General Assembly has arbitrarily classified, and unreasonably discriminated against, the most seriously injured victims of medical malpractice, but has not limited the recovery of those victims who suffer moderate or minor injuries. She points out that the burden of this legislative effort to reduce or maintain the level of malpractice insurance premiums falls exclusively on those extremely unfortunate victims who most need financial protection.

Defendants argue that such unequal treatment is necessary to deal with what they describe as the "medical malpractice crisis." Citing *Hall v. Gillins* (1958), 13 Ill.2d 26, and *Cunningham v. Brown* (1961), 22 Ill.2d 23, they argue that the General Assembly can set limits on recoveries by plaintiffs even if the result of such limits is to deny certain plaintiffs full compensation for their injuries.

In *Hall,* at a time when the Wrongful Death Act limited recovery to $25,000 (see Ill. Rev. Stat. 1955, ch. 70, par. 2), the plaintiffs in a wrongful death action sought damages of $189,950. The plaintiffs contended that the $25,000 limitation deprived them of a complete and adequate remedy and that it violated the provision of section 19 of article II of the Illinois Constitution of 1870 that "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; ***." Pointing out that there was no common law cause of action for wrongful death, and that the General Assembly had created the action by statute in 1853, the court said: "In our opinion the constitutional question is not formidable when it is considered in the context of the situation that existed when the statute was originally enacted. At that time no action whatsoever was permitted for a wrongful death. The legislature took away no right when it enacted the statute. It created both the right and the remedy, and we think that its power to limit the maximum recovery in the action that it created can not be questioned." 13 Ill.2d 26, 29.

In *Cunningham,* the court held that there was no common law action for damages against a supplier of alcoholic liquor for injuries inflicted by an intoxicated person, or resulting from intoxication, that such cause of action was created by the Dramshop Act of 1872, and that section 14 of article VI of the Dramshop Act (Ill. Rev. Stat. 1957, ch. 43, par. 135) was valid even though it provided a limitation on the amount of recovery. Unlike the causes of action involved in *Hall* and *Cunningham,* the

right to recover damages for injuries arising from medical malpractice existed at common law (see *Ritchey v. West* (1860), 23 Ill. 329, in which Abraham Lincoln appeared as counsel for the defendant physician) and was not the creature of the General Assembly. We find *Hall* and *Cunningham* clearly distinguishable.

Defendants cite the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) as precedent for the limitation of monetary recovery for injuries. The Workmen's Compensation Act provided a *quid pro quo* in that the employer assumed a new liability without fault but was relieved of the prospect of large damage judgments, while the employee, whose monetary recovery was limited, was awarded compensation without regard to the employer's negligence. In *Moushon v. National Garages, Inc.*(1956), 9 Ill.2d 407, 412, the court said: "By the Workmen's Compensation Act, the legislature required the employer to give up certain defenses and required the employee to give up certain recoverable elements of damage of a common-law negligence action; and this we have held many times is a reasonable exercise of the legislature's police power for the promotion of the general welfare. (See, for example, *Grand Trunk Western Railway Co. v. Industrial Com.* 291 Ill. 167; *Matthiessen & Hegeler Zinc Co. v. Industrial Board,* 284 Ill. 378.) This court has never considered one to have such a vested right in the common-law rules governing negligence actions as to preclude the legislature from substituting a statutory remedy of this type for the common-law remedy."

The Workmen's Compensation Act provides for the payment of the employee's medical expenses and payment of compensation for the duration of his incapacity, which may exist throughout his life. Public Act 79—960 abolished no common law defenses, nor did it purport either to alter the essential elements of a cause of action for medical malpractice or lessen the plaintiff's burden of proof. Furthermore, the very seriously injured malpractice victim,

because of the recovery limitation, might be unable to recover even all the medical expenses he might incur, in which event he would recover nothing for any other loss suffered.

Defendants argue that there is a societal *quid pro quo* in that the loss of recovery potential to some malpractice victims is offset by "lower insurance premiums and lower medical care costs for all recipients of medical care." This *quid pro quo* does not extend to the seriously injured medical malpractice victim and does not serve to bring the limited recovery provision within the rationale of the cases upholding the constitutionality of the Workmen's Compensation Act.

*Li Petri v. Turner Construction Co.* (1967), 36 Ill.2d 597, presented a situation that is almost the converse of this case. There a $70,000 judgment was entered against two defendants for a death resulting from a violation of the Structural Work Act (Ill. Rev. Stat. 1955, ch. 48, pars. 60 through 69). The defendants argued that the failure to apply the monetary limitation of the Wrongful Death Act to section 9 of the Structural Work Act denied them equal protection and constituted special legislation for the reason that "defendants sued under the Wrongful Death Act, who have caused a death by wrongful act, neglect or default, are protected by the monetary limitation on recovery in that act [then $25,000 (Ill. Rev. Stat. 1955, ch. 70, par. 2)], while defendants sued under the Scaffold Act, who have caused a death by wilful violation of the act, are not protected by such a monetary limitation, and that there is no reasonable basis for treating defendants under the two acts differently." (36 Ill.2d 597, 603.) After reviewing statistics, cited by one of the defendants, of the extrahazardous activities causing death that would come within the purview of the Wrongful Death Act rather than the Scaffold Act, the court said: "Conceding *arguendo* that the recovery for a death caused by a wrongful act, neglect or default under the Wrongful Death Act should be

the same as a recovery for a death caused by wilful violation of the Scaffold Act, we are faced with the question of whether the unlimited recovery of the Scaffold Act is unfair to defendants under that act or whether the monetary limitation of the Wrongful Death Act is unfair to a plaintiff under the latter act. It would seem that a plaintiff under the Wrongful Death Act is in a better position to argue that the only limit on his recovery should be that shown by the evidence, than a defendant under the Scaffold Act saying he should not be liable for the injuries shown by the evidence because a defendant under the Wrongful Death Act does not have such liability." (36 Ill.2d 597, 604-05.) The court went on to say that the "maximum recovery of the Wrongful Death Act, if it be special legislation, has not been shown to have injured them [defendants] and they have no standing to complain of its existence." (36 Ill.2d 597, 606.) Later that year, the General Assembly amended the Wrongful Death Act and removed the monetary limitation on the permissible recovery. See Ill. Rev. Stat. 1967, ch. 70, par. 2.

We have considered the arguments of defendants that the General Assembly may effect reform "one step at a time," that in so doing it "may select one phase of one field and apply a remedy there, neglecting the others" (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465), and that under *Davis v. Commonwealth Edison Co.* (1975), 61 Ill.2d 494, the classification created by this legislation is not unreasonable or arbitrary. We do not agree. Although we do not hold or even imply that under no circumstances may the General Assembly abolish a common law cause of action without a concomitant *quid pro quo,* we have consistently held that to the extent that recovery is permitted or denied on an arbitrary basis a special privilege is granted in violation of the Illinois Constitution. (*Grace v. Howlett* (1972), 51 Ill.2d 478; *Harvey v. Clyde Park District* (1964), 32 Ill.2d 60.) We are

of the opinion that limiting recovery only in medical malpractice actions to $500,000 is arbitrary and constitutes a special law in violation of section 13 of article IV of the 1970 Constitution, and we so hold.

We consider next the question of the constitutionality of section 401a of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 1013a) added by section 3 of Public Act 79—960. This new section provides:

> "No insurance company licensed or authorized to write insurance covering medical, hospital or other healing art malpractice shall refuse to renew any existing policy providing such coverage at the rates existing on June 10, 1975, unless such company shall have provided sufficient evidence to justify such increase to the Director of Insurance, provided that the Director shall not approve such increase until after public hearings have been held and the increase justified from data from the books and records of such company."

Hartford and Medical Protective argue that section 401a denies them equal protection and due process of the law in violation of the fourteenth amendment of the Federal Constitution and section 2 of article I of the Illinois Constitution; that it constitutes special legislation in violation of section 13 of article IV of the Illinois Constitution; that it constitutes an unlawful delegation of legislative authority prohibited by section 1 of article IV of the Illinois Constitution; that it impairs the obligation of contract in violation of section 16 of article I of the Illinois Constitution; and that, in violation of section 8(d) of article IV of the Illinois Constitution, it does not deal with the same subject matter as the rest of the act. We find it necessary to consider only the classification created by section 401a which Hartford and Medical Protective contend is a special law, and a denial of equal protection of the law.

By its terms section 401a regulates medical malpractice insurance rates on policies that were in existence on June 10, 1975, and not those written after that date. The

Director acknowledges that the initial rate for policies written after June 10, 1975, would not be regulated but argues that the new contract would then become an existing contract and subject to regulation. Aside from the fact that this is not what the section provides, it would appear that it is as important to regulate the initial rate for a new medical malpractice insurance policy as to regulate the rate for an existing policy.

*People ex rel. East Side Levee and Sanitary District v. Madison County Levee and Sanitary District* (1973), 54 Ill.2d 442, 447, involved a statute which provided:

> "Any sanitary district organized, operated and maintained pursuant to the provisions of this Act which lies in 2 counties and which has an equalized assessed valuation for tax purposes of $100,000,000 or more, upon the effective date of this amendatory Act of 1972, is divided for more effective administrative and fiscal control into 2 separate districts ***."

We said: "The briefs cite no reasons, and none are apparent to us, for restricting the advantages of 'more effective administrative and fiscal control' to those two-county districts which on December 22, 1972, (the effective date of the Act), had an equalized assessed valuation of $100,000,000, and not extending the same advantages to those districts reaching that valuation level at a subsequent time. [Citations.] It is our opinion that a general law could have been made applicable, and that Public Act 77–2819 therefore violates the constitution's prohibition against special legislation." 54 Ill.2d 442, 447.

We find the foregoing language apposite here. We have considered the Director's argument that section 401a, read *in pari materia* with article XXXVI of the Insurance Code (Ill. Rev. Stat. 1975, ch. 73, pars. 1065.201 through 1065.221), is a valid exercise of the State's police power. Upon examination of article XXXVI we remain unpersuaded and hold that section 401a of the Insurance Code is a special law violative of section 13 of article IV of the Constitution of 1970.

For the reasons set forth the judgments of the circuit court of Cook County are affirmed except to the extent that the circuit court held unconstitutional section 58.2a of the Civil Practice Act, and to that extent its judgment is vacated.

*Affirmed in part and vacated in part.*

MR. JUSTICE UNDERWOOD, concurring in part and dissenting in part:

I agree with the court's holding that the limitation on policy rate increases set forth in section 401a of the Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 1013a) is invalid, and that the provisions for a medical review panel are invalidated by the inclusion therein of a circuit judge who is required to act in a manner incompatible with the constitutional provisions referred to in the court's opinion.

Resolution of the problem presented by section 4 of Public Act 79—960 (Ill. Rev. Stat. 1975, ch. 70, par. 101) as to the validity of the $500,000 maximum limitation upon recoveries in medical malpractice cases is not so easily accomplished. I have finally concluded, however, that it represents a valid exercise of legislative discretion.

There is no question that the legislature has the power, within constitutional limits, to restrict or even eliminate common law rights. As was said in *Werner v. Southern California Associated Newspapers* (1950), 35 Cal. 2d 121, 125-26, 216 P.2d 825, 828:

" 'Except as the Constitution otherwise provides, the Legislature has complete power to determine the rights of individuals. (See *Delaney v. Lowery,* 25 Cal. 2d 561, 568 [154 P.2d 674].) It may create new rights or provide that rights which have previously existed shall no longer arise, and it has full power to regulate and circumscribe the methods and means of enjoying those rights', so long as there is no interference with constitutional guaranties.' (*Modern Barber Col. v. Cali-*

*fornia Emp. Stab. Com.,* 31 Cal. 2d 720, 726. [192 P.2d 916, 920.] '. . . the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' *Silver v. Silver,* 280 U.S. 117, 122 [50 S. Ct. 57, 74 L. Ed. 221]; *Langdon v. Sayre,* 74 Cal. App. 2d 41 [168 P.2d 57].)"

(See also *Clarke v. Storchak* (1943), 384 Ill. 564; *Komorowski v. Boston Store* (1930), 341 Ill. 126; *Grand Trunk Western Ry. Co. v. Industrial Com.* (1919), 291 Ill. 167; 15 Am. Jur. 2d *Common Law,* sec. 16 (1964).) The troublesome question, however, is not whether common law rights may be limited, but whether, as the court now holds, application of that limitation only to medical malpractice recoveries is without any rational basis.

This court has repeatedly held that the prohibition against special legislation, which the majority holds this limitation to be, "does not mean that a statute must affect everyone in the same way" (*Davis v. Commonwealth Edison Co.* (1975), 61 Ill.2d 494, 498), for "perfect uniformity of treatment of all persons is neither practical nor desirable" (*Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 193). A statute is presumed valid even though some inequality results (*McGowan v. Maryland* (1961), 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101), and the burden of demonstrating that a classification is unreasonable or arbitrary is upon the person attacking the validity of the classification. (*People v. Palkes* (1972), 52 Ill.2d 472, 477.)

"A classification, however, cannot be arbitrary or unreasonable. It must be based on a rational difference of condition or situation existing in the persons or the objects upon which the classification rests. (*Illinois Coal Operators Association v. Pollution Control Board,* 59 Ill.2d 305, 311; *Youhas v. Ice,* 56 Ill.2d 497, 500; *Begich v.*

*Industrial Com.,* 42 Ill.2d 32, 35; *People ex rel. County of Du Page v. Smith,* 21 Ill.2d 572, 578.) This was described in *People ex rel. County of Du Page v. Smith,* 21 Ill.2d 572, 578, where this court said: 'If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects.' A differentiation or distinction 'is not arbitrary if any state of facts can reasonably be conceived that would sustain it.' *Illinois Association of Fire Fighters v. City of Waukegan,* 37 Ill.2d 423, 425, quoting *Bagdonas v. Liberty Land & Investment Co.,* 309 Ill. 103, 110." *Davis v. Commonwealth Edison Co.* (1975), 61 Ill.2d 494, 497.

Much has been written and said in recent times about the current "crisis" in the area of medical malpractice resulting from substantial increases in the numbers of cases filed and amounts of jury verdicts, enormous increases in malpractice insurance premiums, threatened walkouts and strikes by doctors, etc. The briefs of the defendants in this case maximize the problem and those of the plaintiffs minimize it. Theory, fact and fiction are well-nigh inextricably intermingled. Despite this, it is clear that serious problems do exist (see, *e.g.,* Plant, *The Medical Malpractice "Crisis",* vol. 20, No. 2, p. 13, Law Quadrangle Notes, U. of Mich. Law School), to which a majority of the States have responded with legislative action in various forms, including new means of providing malpractice insurance, limitations upon contingency fees of lawyers, screening panels to hear claims, maximum liability limits, etc. (State Government News, January, 1976, vol. 19, Issue No. 1, p. 8). While the trial courts of several States have considered challenges to these legislative products, they do not yet

appear to have been passed upon by courts of review.

It is quite true that the $500,000 limitation upon recovery bears most heavily upon the severely injured person. A stronger case for the limitation would exist if it permitted unrestricted recovery of actual expenses, for it is conceivable, as the majority emphasizes, that with today's inflated costs, total expenses of treatment and care for a seriously and permanently injured person could exceed the allowable recovery. To be weighed against that rather remote possibility, however, is the vital interest, if not the absolute necessity, of society in having adequate health care available at reasonable cost. To the admittedly imprecise extent that the recovery limitation here in question contributes to that goal, far more persons are benefited than in any other area in which similar litigation occurs.

Given the fact that serious problems do exist; that, while not all of them are unique to the medical malpractice area, it is that area in which they appear most acute; that health care costs affect virtually all persons; that "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it" (*Mc-Gowan v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105); that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind"; and that "the legislature may select one phase of one field and apply a remedy there, neglecting the others" (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465); and that the $500,000 limitation still affords entirely adequate protection to the vast majority of victims of medical malpractice, I am not prepared to hold it an impermissible exercise of legislative discretion.

MR. JUSTICE RYAN joins in this partial concurrence and partial dissent.