(Nos. 67436, 67440, 67455, 67468, 67475, 67476
cons.—

THE PEOPLE OF THE STATE OF ILLINOIS v. SHARON L. PINE *et al.*, Appellees (Jim Edgar, Secretary of State, Appellant).

*Opinion filed July 19, 1989.*

90

CLARK, J., joined by STAMOS and CALVO, JJ., dissenting.
CALVO, J., joined by CLARK and STAMOS, JJ., also dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan and Richard W. Merrill, Jr., Assistant Attorneys General, of Chicago, of counsel), for appellant.

No appearance for appellee Sharon L. Pine.

Larry A. Davis, of Davis & Riebman, of Skokie, and Mark A. Mosby and Dennis A. Rendleman, of Springfield, for *amicus curiae* Illinois State Bar Association.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan and Diane Curry Grapsas, Assistant Attorneys General, of Chicago, for counsel), for appellant.

No appearance for appellee Bobby L. Barbee.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B.

Kaplan and Diana Curry Grapsas, Assistant Attorneys General, of Chicago, of counsel), for appellant.

No appearance for appellee Joseph J. Hazel.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan and Respicio F. Vazquez, Assistant Attorneys General, of Chicago, of counsel), for appellant.

No appearance for appellee John Stewart.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan and Diane Curry Grapsas, Assistant Attorneys General, of Chicago, of counsel), for appellant.

No appearance for appellee James L. Kindred.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellant.

No appearance for appellee Keith O. Diveley.

JUSTICE RYAN delivered the opinion of the court:

These consolidated appeals present the issue of whether the Secretary of State has standing to appeal an order of a trial court directing the Secretary to issue a judicial driving permit (JDP) pursuant to section 6—206.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1). The appellate court, relying on *People v. Bluett* (1988), 166 Ill. App. 3d 593, held that the Secretary lacked standing and dismissed the appeals. We granted the Secretary's petition for leave to appeal (107 Ill. 2d R. 315), and allowed the Illinois State Bar Association to file a brief as *amicus curiae* because the various defendants did not file responses in this court or the appellate court on the issue presented. We conclude that it was improper to dismiss the appeals. The Secretary of State is granted broad authority over matters within the Illinois Vehicle Code and is intricately involved in the judicial driving permit proceedings held pursuant to section 6—206.1. We therefore reverse and remand.

This issue arises as a result of circuit court orders which granted JDPs to drivers whose licenses had been summarily suspended. The driving privileges of a driver who has been arrested for driving under the influence of drugs or alcohol (DUI) are suspended pursuant to our statutory summary suspension law (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). Section 6—206.1 of the Illinois Vehicle Code provides that the first-time offender, as defined in section 11—500 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—500) (one who has not had a previous DUI conviction within five years), may petition the circuit court for a judicial driving permit to avoid undue hardship. (Ill. Rev. Stat. 1987, ch. 95½, par.

6—206.1.) Subject to certain conditions, the court may issue the JDP and allow the person to drive to and from work during certain times, or to drive for the purpose of receiving medical care or drug treatment. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(a).) After the court enters the order, it is submitted to the Secretary. The statute requires that any submitted JDP form which "contains insufficient data or fails to comply with this Code *shall not be \*\*\* entered* to the driver record but shall be returned to the issuing court indicating why the JDP *cannot be so entered.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(d).) Drivers who are not first-time offenders may also receive a hardship license, but they must proceed in an administrative proceeding before the Secretary of State. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205.) Section 6—201(c) provides that *"[e]xcept as provided in Section 6—206.1,* the Secretary of State shall have exclusive authority to grant, *issue,* deny, cancel, suspend and revoke driving privileges, drivers' licenses and *restricted driving permits.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 95½, par. 6—201(c).

In these six cases, the Secretary sought to appeal the circuit court orders which directed him to issue the JDPs but his appeals were dismissed by the appellate court for lack of standing. In this court, the Secretary seeks review of only the standing issue and not a review of the factual basis for the decisions of the various circuit courts ordering him to enter the JDPs. It is thus unnecessary to present the facts of each of the consolidated cases. However, the facts of the lead case, People v. Pine (No. 67436), is illustrative of how the issue arose in these cases, and presumably numerous other cases which, we are informed, are pending in the appellate court.

On September 10, 1983, Sharon Pine was arrested for DUI and placed under supervision. In March 1988,

she was again arrested and convicted for DUI. She petitioned the court for a JDP so that she could drive to and from her place of work. In April, the circuit court of Vermilion County entered an order directing the Secretary of State to issue her a JDP. The Secretary returned the order to the court and, in a letter, stated that Pine was not eligible for a JDP because she had a previous DUI conviction in the last five years and, therefore, did not qualify as a first-time offender under the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—500). The court resubmitted the order to the Secretary on May 12, 1988, and from that renewed order the Secretary attempted to appeal. On June 10, 1988, the appellate court, citing *People v. Bluett* (1988), 166 Ill. App. 3d 593, ordered the Secretary to show cause why his appeal should not be dismissed for lack of standing. Following submission of the Secretary's response, the rule was enforced and the appeal dismissed on June 20, 1988. The Secretary then filed a petition for leave to appeal in this court. Although the facts in the other cases differ somewhat from those in People v. Pine, for the purpose of this consolidated case, it is not necessary to set them forth in detail.

The issue of standing before us involves the Secretary of State, a public official and member of the executive branch of the government, and not a private citizen. In *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, we dealt with the standing of another public official, the Attorney General, to bring an appeal in a case where he was not a party in the lower court proceeding. In *Tomlinson* we stated "that the interests that will justify an appeal by one not a party must be direct, immediate and substantial. It must be an interest which would be prejudiced by the judgment or benefit from its reversal." (65 Ill. 2d at 387.) *Tomlinson* involved a dispute in regard to a charitable trust, and this court found that the

Attorney General was statutorily vested with authority to enforce and supervise charitable trusts and, in spite of the fact that he had not participated in the proceeding in the lower court, had sufficient interest to appeal the circuit court decision. Likewise, in *Pioneer Processing, Inc. v. Environmental Protection Agency* (1984), 102 Ill. 2d 119, we granted the Attorney General standing to appeal a decision of the Pollution Control Board, even though he had not participated in the administrative proceeding. The holding was based on the "strong public interest in a healthful environment" and the Attorney General's duty and authority, as the State's chief legal officer, to represent the people for the protection of that interest. (102 Ill. 2d at 138-39.) Just as the Attorney General is involved in and responsible for a number of areas of public interest, the Secretary is intricately involved in the area of driving privileges and protecting the public from violations of the Illinois Vehicle Code.

The Secretary has broad authority to administer the State's laws governing the conduct of drivers on the roads, and is statutorily directed to observe, administer and enforce the provisions of the Code. (Ill. Rev. Stat. 1987, ch. 95½, pars. 2—101, 2—104.) As noted, this authority includes the exclusive right "to grant, issue, deny, cancel, suspend and revoke driving privileges, drivers' licenses and restricted driving permits," except as provided in section 6—206.1. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—201(c).) One of the important responsibilities of the Secretary is protecting our citizens from the hazards of drunk drivers. (See *People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 110 ("drunk driving and its consequences represent one of our society's gravest problems").) In conjunction with this role, the Secretary has authority to revoke and reinstate the driving privileges of persons convicted of DUI. Ill. Rev. Stat. 1987, ch. 95½, pars. 6—205, 6—206, 6—208.

Until January 1, 1986, sole authority to suspend and revoke drivers' licenses and privileges, as well as authority to grant hardship relief or reinstatement, was vested in the Secretary. Effective January 1, 1986, the legislature created the statutory summary suspension law, which provided for the withdrawal of the license or privilege to operate a motor vehicle from a person convicted of DUI. (Ill. Rev. Stat. 1985, ch. 95½, pars. 1—203.1, 2—118.1, 6—206.1, 6—208.1, 11—501.1.) The law vested the circuit court with authority to grant relief to first offenders from a statutory summary suspension. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1.) The Secretary of State still retained the authority to hold hearings and grant hardship relief or reinstatement, after a suspension or revocation imposed pursuant to its authority, and maintained exclusive authority over non-first-time DUI offenders. Ill. Rev. Stat. 1985, ch. 95½, pars. 6—205, 6—208.

Illinois State Bar Association (ISBA) contends that the Secretary does not have standing to appeal a JDP order because his role in that proceeding is merely ministerial and administrative. ISBA notes that in the previous version of the JDP statute, the clerk of the court was responsible for the issuance of the JDPs pursuant to court order, and the Secretary was required to enter the appropriate notation on the driver's record. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(d).) ISBA argues that in the new version of the statute, the Secretary has replaced the clerk of the court in the performance of a ministerial act and has no more right or interest to claim party status or standing than the clerk would have had. As noted, section 6—206.1 was added effective January 1, 1986, and provided that the clerk of the court issue the JDP. This section was amended effective September 18, 1986, giving the Secretary the authority to return

the JDP to the court for the reasons above indicated. Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(A)(d).

First, it is important to note that we are not determining whether the Secretary has standing to participate in the JDP hearing. The extent of his participation in that proceeding is established by statute. We are concerned with whether he has sufficient interest to appeal an order when, after the court enters the order, his participation (returning the JDP to the court with stated reasons for not entering) has failed to secure its intended result. Second, in the statute now under consideration, the Secretary has a much greater role with regard to the JDP order than did the clerk of the court. Effective September 18, 1986, the legislature inserted, by an amendment to section 6—206.1, and restated in the amendment effective January 1, 1987, a provision that:

> "Any submitted court order that contains insufficient data or fails to comply with this Code shall not be utilized for JDP issuance or entered to the driver record but shall be returned to the issuing court indicating why the JDP cannot be so entered. A notice of this action shall also be sent to the JDP petitioner by the Secretary of State." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(d).)

Therefore, under the amendment, the Secretary is required to review the court order and his records to insure that the driver is entitled to a JDP, and that the order is in conformance with the law. If there is an error in the order, the Secretary must return it to the court "indicating why the order cannot be so entered." After the order is returned, the court may correct it or, as was done in *Bluett* and some of these consolidated cases, it may resubmit the order and direct the Secretary to enter the JDP. In exercising this duty, in some of the consolidated cases in this appeal, the Secretary determined that the driver did not qualify for a JDP because he or

she had a previous DUI conviction within the previous five years. (Ill. Rev. Stat. 1987, ch. 95½, pars. 6—206.1(B)(a), 11—500.) The distinction of who is a first-time offender is important because it is the Secretary who has jurisdiction, under the restricted driving permit provisions of the Code, to decide the eligibility for driving privileges of any individual who is not a first-time offender. Therefore, if the court grants a JDP to a person who is not a first-time offender, the court has exercised authority which the legislature has placed with the Secretary, and not with the court.

After the section 6—206.1(B)(d) procedure between the court and the Secretary is completed, the order is ripe for appellate review. The rights and interests of the parties involved are fully adjudicated and the litigation is terminated, with nothing necessary but enforcement of the order. There is, therefore, a final and appealable order. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171; *South Chicago Community Hospital v. Industrial Comm'n* (1969), 44 Ill. 2d 119, 121.) Certainly, if the court denied the issuance of the JDP or agreed with the Secretary that the order was improperly granted, the petitioner could appeal. However, faced with the reverse situation, where the JDP was issued and the court does not agree with the Secretary, some party must have authority to determine the propriety of the order through the appellate process. We do not agree with ISBA that the Secretary's responsibility and interest in the JDPs is merely ministerial and administrative, similar to that of the clerk of the court under the provision of section 6—206.1 that was in effect from January 1, 1986, to September 18, 1986. Instead, the Secretary, under the present version of section 6—206.1, has direct involvement in reviewing the propriety of the JDP order, and, through the right of appellate review, he seeks to insure that the licensing responsibilities are properly

shared between the courts and his office in accordance with legislative intent. We believe that this responsibility and interest in the JDP process and his broad authority in the Illinois Vehicle Code confers on the Secretary of State standing to appeal the order.

ISBA also contends that the Secretary should not be granted standing because the appropriate party to bring these appeals is the local State's Attorney from each county. The State's Attorney is directed to prosecute violations of the Illinois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 16—102; see also Ill. Rev. Stat. 1987, ch. 14, par. 5 (general duties of the State's Attorney).) In *People v. O'Donnell* (1987), 116 Ill. 2d 517, we noted that in reinstatement proceedings for a driver whose license has been summarily suspended (Ill. Rev. Stat. 1987, ch. 95½, par. 6—208.1), the Secretary provided notice to the local State's Attorney regarding upcoming reinstatement applications. The State's Attorney could then appear and present any evidence he may have in opposition to the application. In the cases before us, the record is unclear whether the State's Attorney appeared at the JDP hearings, or that a procedure has been developed with the Secretary of State to provide information regarding the petition. However, the statute seems to allow these matters to proceed *ex parte* and the JDP proceeding, unlike reinstatement proceedings, requires the Secretary to be more actively involved after the order has been entered. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(d).) Moreover, we do not believe that in all instances the State's Attorney's and the Secretary's interests are consonant such that the province to seek review of the order should be granted only to the State's Attorney.

The Secretary has demonstrated that his interest is to insure that the court strictly adheres to its statutory authority in granting JDPs. Failure of the court to do so

may result in its usurping the jurisdiction of the Secretary. The State's Attorney is interested in prosecutions at the local level and has demonstrated that the office is amenable to negotiating certain matters so that the petitioner can qualify for a JDP. In *People v. Bluett* (1988), 166 Ill. App. 3d 593, for example, the assistant State's Attorney agreed to amend the date of the DUI charge, "for purposes of the J.D.P. hearing only," in an attempt to make Bluett's arrest appear to be more than five years after his prior conviction. Also, in People v. Diveley (No. 67476), one of the cases in this appeal, the assistant State's Attorney agreed to vacate a prior DUI conviction apparently so that Diveley would qualify as a first-time offender.

The interests of the Secretary of the State, in certain circumstances involving the enforcement of laws relating to drunken driving, are different from the local State's Attorneys'. The Secretary seeks to insure that the Illinois Vehicle Code, and, more specifically, that the JDP and hardship license provisions, are properly and uniformly applied throughout the State. He also seeks to preserve his jurisdiction over non-first-time offenders who want hardship licenses. To guarantee that these interests are protected, the Secretary should have standing to appeal a decision granting a JDP. Thus, there may be instances where the Attorney General, as representative of the executive branch and legal counsel for the State, should represent the Secretary in his appeals from a court's order granting a JDP.

Allowing the Secretary to appeal is analogous to cases where courts have held that in an ancillary proceeding, one not a party to the original matter could seek appellate review of an order without first having to be held in contempt for refusing to obey the court order. For example, *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, involved a discharge proceeding before the Civil

Service Commission of an employee of a mental health center. The superintendent of the center refused to comply with the administrative subpoena *duces tecum* requiring him to testify and to produce for inspection the records of a former patient of the facility. In an ancillary court proceeding to enforce the subpoena, the circuit court granted the petition of the employee and the Civil Service Commission, and directed the superintendent to comply with the subpoena. The superintendent appealed and the appellate court found the order of the circuit court to be final and appealable. The court reasoned that "the proceeding before the circuit court was a separate, independent action [from the administrative proceeding]. [Citation.] After the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated ***. The order of the court finally determined the rights of the parties before it and terminated the litigation." (74 Ill. App. 3d at 216.) In *Ellis v. Interstate Commerce Comm'n* (1915), 237 U.S. 434, 59 L. Ed. 1036, 35 S. Ct. 645, a witness was allowed to appeal a trial court order directing him to answer questions in an inquiry before the Interstate Commerce Commission. On appeal, the Court stated: "There is no doubt that this appeal lies. The order is not like one made to a witness before an examiner or on the stand in the course of a proceeding *inter alios* ***. [Citation.] It is the end of a proceeding begun against the witness." 237 U.S. at 442, 59 L. Ed. at 1040, 35 S. Ct. at 646; see *Durkin v. Hey* (1941), 376 Ill. 292; *Lorsbach v. Hartford Fire Insurance Co.* (1942), 315 Ill. App. 32.

Likewise, in the JDP proceeding the Secretary is not initially a party, but if he and the court disagree over the order, under section 6—206.1(B)(d), in a sense, an ancillary proceeding is created between the two to determine whether the JDP is statutorily correct. In the first phase of the hardship proceeding, the driver petitions the cir-

cuit court for a JDP. During this stage, the State's Attorney, if he chooses, may participate. If the court grants the petition, an order is entered for the JDP. After the order is entered, the litigation in court is terminated between the petitioner and the State's Attorney. In the second phase, the matter proceeds to the Secretary, who reviews the court order and returns it to the court if it is found improper. The court may accede to the Secretary's position or resubmit the order. If it is resubmitted, the Secretary may ignore the order and risk being held in contempt, or an appeal may be taken. Thus, the statute contemplates a separate proceeding in which the Secretary is intricately involved, not unlike that present in the cases just discussed.

ISBA argues that before the Secretary should be allowed to appeal, he must not only return the order, but also refuse to enter the resubmitted order and wait until he is held in contempt. (See *People v. Minor* (1987), 162 Ill. App. 3d 140 (Secretary was held in contempt for failure to issue a JDP).) We do not believe that that is necessary. After the court resubmits the order, it is final and appealable. As in the analogous proceedings to enforce administrative orders in the cases discussed above, there is no reason that the Secretary must be held in contempt before he may appeal the decision. (See *Durkin v. Hey* (1941), 376 Ill. 292; *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214.) However, before the Secretary may appeal, the procedure outlined in section 6—206.1(B)(d) should be followed. After the order has been sent to the Secretary, he must either enter it or return it to the court. If he returns it and the court changes the order to meet the Secretary's objections, there is no need for review of the order. If the court chooses to resubmit the order without meeting the Secretary's objections, the order then, in the Secretary's view, does not comply with the law. The Secretary may then seek ap-

pellate review of the order. The records in these consolidated cases are incomplete, and it is unclear whether the JDPs were issued or whether this procedure has been followed. On remand, it should be determined whether the Secretary has proceeded so that the order against him has been finalized and is appealable under the above construction.

Last, ISBA argues that granting the Secretary standing to appeal may result in a violation of the separation of powers doctrine. The separation of powers clause to our 1970 constitution provides:

> "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.)

"The doctrine, with respect to the relationship between the executive and judicial branches of government, is violated when the challenged provision would confer powers to one branch of government which properly should be exercised by another branch [citation] *** or when one branch usurps the authority of another branch [citations]." (*People v. Inghram* (1987), 118 Ill. 2d 140, 146-47.) In *Inghram*, we held that the authority granted to the court under section 6—206.1 to issue JDPs did not confer undue power to one branch of government, usurp the executive branch's powers or unduly burden the judicial branch with a nonjudicial function. (118 Ill. 2d at 149.) Similarly, in upholding the constitutionality of the authority of the circuit court to statutorily suspend a license or privilege, we held that "there has been no showing that an essential function of the Secretary of State's office has been transferred to the judiciary." (*People v. Hamilton* (1987), 118 Ill. 2d 153, 162; see also *People v. O'Donnell* (1987), 116 Ill. 2d 517 (no violation of the separation of powers clause by statute requiring circuit court to collect reinstatement fees of drivers whose licenses were restored).) In this case, the Secre-

tary and the court are both exercising authority granted by statute. The court is not exercising any power conferred by the constitution or the common law. (See *People v. Hamilton* (1987), 118 Ill. 2d 153, 162.) We do not believe that construing the statute so as to allow the Secretary to appeal a circuit court's JDP order poses a separation of powers violation. There is no transfer of authority away from the judiciary or performance of any duty reserved for the judiciary. We are only allowing the Secretary to appeal an order entered when his participation pursuant to section 6—206.1(B)(d) has failed to secure what he believes is the proper result.

Accordingly, we reverse the decisions of the appellate court and remand the cases to that court with directions to proceed in accordance with the views expressed herein.

*Reversed and remanded.*

JUSTICE CLARK, dissenting:

The majority's decision that the Secretary of State (Secretary) has standing to appeal a trial court's granting of a judicial driving permit (JDP) is based upon the majority's conclusion that under section 6—206.1(B) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)), the Secretary plays a substantial part in JDP proceedings. (129 Ill. 2d at 99-100.) Because I believe that the majority's reading of the statute assigns a far greater role to the Secretary in JDP proceedings than the General Assembly intended, I must respectfully dissent.

Section 6—206.1(B) of the Illinois Vehicle Code provides:

> "(a) *** The [circuit] court may issue a court order, pursuant to the criteria contained in this Section, directing the Secretary of State to issue *** a JDP to the petitioner. ***

* * *

(d) The Secretary of State shall, upon receiving a court order from the court of venue, issue a JDP to a successful Petitioner under this Section. Such court order form shall also contain a notification, which shall be sent to the Secretary of State, providing the name, driver's license number and legal address of the successful petitioner, and the full and detailed description of the limitations of the JDP. ***

Any submitted court order that contains insufficient data or fails to comply with this Code shall not be utilized for JDP issuance or entered to the driver record but shall be returned [by the Secretary] to the issuing court indicating why the JDP cannot be so entered." Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B).

The majority reads this language as giving the Secretary broad powers and a significant role in JDP proceedings. According to the majority, the statute creates a two-step JDP proceeding:

"In the first phase of the hardship proceeding, the driver petitions the circuit court for a JDP. During this stage, the State's Attorney, if he chooses, may participate. If the court grants the petition, an order is entered for the JDP. After the order is entered, the litigation in court is terminated between the petitioner and the State's Attorney. In the second phase, the matter proceeds to the Secretary, who reviews the court order and returns it to the court if it is found improper. The court may accede to the Secretary's position or resubmit the order. If it is resubmitted, the Secretary may ignore the order and risk being held in contempt, or an appeal may be taken. Thus, the statute contemplates a separate proceeding in which the Secretary is intricately involved, not unlike that present in the cases just discussed." 129 Ill. 2d at 102-03.

There are two problems with the majority's reading of the statute. The first is that it violates the "elementary principle of statutory interpretation that no statute should be construed in a manner which will lead to consequences which are absurd, inconvenient, or unjust."

(*People v. Partee* (1988), 125 Ill. 2d 24, 30-31.) Under the majority's reading of the statute, the State's Attorney, as a representative for the people of the State of Illinois, can present evidence and argument against the driver's petition for a JDP. The trial court, based upon the evidence and argument presented at the proceeding, then makes a ruling as to whether a JDP should issue. Then, the Secretary of State, a second representative for the people of the State of Illinois, has the opportunity to review the proceeding. If the Secretary disagrees with the trial court's factual or legal conclusions, the Secretary can present new evidence and argument as to why the JDP should not issue, essentially requiring that the trial court make a second ruling. If the court disagrees with the Secretary, the Secretary is then entitled to appeal.

Such a procedure, however, would be illogical since it would require that circuit courts make two separate determinations on the same issue in JDP proceedings. It would also result in the Attorney General's office's (on behalf of the Secretary) duplicating the work of the State's Attorney's office.

This waste of judicial and executive time and resources would be avoided by narrowly reading the statute as merely creating a ministerial role for the Secretary whereby he issues the court-ordered JDP unless the court's order does not contain the specific, statutorily mandated information concerning "the name, driver's license number and legal address of the successful petitioner, and the full and detailed description of the limitations of the JDP" (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(d)). This narrower reading of the statute is preferable to that of the majority since "[w]here the language of a statute admits of two constructions, one of which would make the enactment absurd and illogical, while the other renders it reasonable and sensible, the construction which leads to an absurd result must be

avoided." *Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312-13.

Under this more narrow reading of the statute, the procedure that would be followed in JDP proceedings would be similar to the one utilized in license reinstatement hearings under the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—208.1). The procedure in reinstatement hearings, as this court explained in *People v. O'Donnell* (1987), 116 Ill. 2d 517, 524, is that where a driver has petitioned the circuit court for reinstatement of his license, the Secretary provides the local State's Attorney with notice of the reinstatement proceeding. The State's Attorney may then appear at the hearing in the circuit court and present evidence (apparently obtained from the Secretary) in opposition to the petition. Similarly, in JDP proceedings, under a narrow reading of the statute, the State's Attorney could receive information from the Secretary regarding the petition for a JDP and, if he so chooses, appear in court and present evidence and argument in opposition to the petition. If the court were to grant the petition, the Secretary would then issue the JDP unless the court's order lacked the statutorily required information. The State's Attorney, as the adverse party in the JDP proceeding, would then have the right to appeal. This procedure makes more sense than the one envisioned by the majority because it would consolidate the Secretary's and the State's Attorney's arguments and evidence for the court to consider at one time, rather than requiring the court to make two separate determinations. It would also avoid the State's Attorney's and the Attorney General's offices from duplicating each other's work.

If the General Assembly had wanted the Secretary to play a significant role in JDP proceedings, the General Assembly would not have done so by creating the convoluted procedure envisioned by the majority. Instead, the

General Assembly would have simply required that the initial driving permit hearing be conducted before the Secretary, subject to judicial review. See, *e.g.*, Ill. Rev. Stat. 1987, ch. 95½, pars. 6—205(c), 6—212 (Secretary, subject to judicial review, may issue hardship licenses for non-first-time offenders).

The second problem with the majority's reading of the statute is that it raises serious separation of powers questions. (See Ill. Const. 1970, art. II, §1.) The majority concludes that there are no separation of powers problems raised by its reading of the statute by stating:

> " 'The [separation of powers] doctrine, with respect to the relationship between the executive and judicial branches of government, is violated when the challenged provision would confer powers to one branch of government which properly should be exercised by another branch [citation] \*\*\* or when one branch usurps the authority of another branch [citations].' (*People v. Inghram* (1987), 118 Ill. 2d 140, 146-47.) \*\*\* In this case, the Secretary and the court are both exercising authority granted by statute. The court is not exercising any power conferred by the constitution or the common law. [Citation.] We do not believe that construing the statute so as to allow the Secretary to appeal a circuit court's JDP order poses a separation of powers violation. There is no transfer of authority away from the judiciary or performance of any duty reserved for the judiciary. We are only allowing the Secretary to appeal an order entered when his participation pursuant to section 6—206.1(B)(d) has failed to secure what he believes is the proper result." (129 Ill. 2d at 104-05.)

I disagree.

Article VI, section 1, of the Illinois Constitution provides that "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." (Ill. Const. 1970, art. VI, §1.) One aspect of the appellate level of the judiciary's power is the exclusive power to review the decisions of the circuit courts. (Ill. Const.

1970, art. VI, §§4, 6.) The Illinois Supreme Court also has the authority to adopt and administer the rules and procedures governing appeals from circuit court judgments. (Ill. Const. 1970, art. VI, §§4, 6, 16.) Finally, the circuit courts may review administrative actions. (Ill. Const. 1970, art. VI, §9.) Nothing in the constitution, with the exception of the Governor's right to grant pardons (see Ill. Const. 1970, art. V, §12), grants the executive branch the power to review judicial decisions.

Under the majority's reading of the statute, however, the Secretary has the power to independently review the circuit court's legal and factual conclusions. If he disagrees with the circuit court, he need not comply with its order. Even though the Secretary's decision not to comply would ultimately be subject to the appellate court's review on appeal, the Secretary would still be acting as a sort of intermediate level of review between the circuit and appellate courts. Such a result, contrary to the majority's assertion, would be both a "transfer of [the judiciary's] authority [to administer the appellate process] away from the judiciary" and the performance of a "duty [to review circuit court decisions that is] reserved for the judiciary." 129 Ill. 2d at 105.

There is a second constitutional problem raised by the majority's reading of the statute. This is not a case where the General Assembly has given an administrative agency original jurisdiction to adjudicate a statutorily created claim. (See *Board of Education v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 165-66.) Instead, the General Assembly placed jurisdiction over JDP proceedings in the circuit courts. Since jurisdiction has been placed in the judiciary, it is the judiciary alone which may exercise the inherently judicial function of applying principles of law in JDP proceedings. (See *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 322.) The

majority's reading of the statute, as allowing the Secretary to determine whether a circuit court's decision in a JDP proceeding "is in conformance with the law" (129 Ill. 2d at 98), therefore renders the statute unconstitutional because it allows a member of the executive branch to exercise an inherently judicial function. See *Wright*, 63 Ill. 2d at 322.

These constitutional problems would be avoided by reading the statute as creating a ministerial role for the Secretary in JDP proceedings whereby the Secretary merely reviews the court's order to insure that it contains the specific information required by the statute. Consequently, the statute should be read narrowly. See *Mulligan*, 123 Ill. 2d at 312 ("as between two possible constructions of a statute, one rendering it as constitutional, and the other as unconstitutional, this court will favor the construction rendering it constitutional").

Because I do not believe that the Secretary's administrative and ministerial responsibilities in JDP proceedings as set forth by the Illinois Vehicle Code are sufficient to give him standing to appeal as a nonparty, I must respectfully dissent.

STAMOS and CALVO, JJ., join in this dissent.

JUSTICE CALVO, also dissenting:

I do not agree that the Secretary of State (Secretary) has standing, as a nonparty appellant, to appeal a judicial order directing him to issue a judicial driving permit (JDP). Accordingly, I dissent.

. The majority concludes that the Secretary has standing as a nonparty to appeal the order of the circuit court directing him to issue a JDP pursuant to section 6—206.1 of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1). This conclusion is based on the Secretary's broad authority to administer

the State's laws governing the conduct of drivers on the roads (Ill. Rev. Stat. 1987, ch. 95½, pars. 2—101, 2—104), and the majority's interpretation of section 6—206.1(B)(d) as requiring the Secretary to review orders of circuit courts directing the Secretary to issue JDPs.

Section 6—201(c) provides that "[e]xcept as provided in Section 6—206.1, the Secretary of State shall have exclusive authority to grant, issue, deny, cancel, suspend and revoke driving privileges, drivers' licenses and restricted driving permits." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—201(c).) Section 6—206.1(d) previously provided for the circuit clerk, upon direction from the circuit court, to issue a JDP to a successful petitioner. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(d).) As section 6—206.1(B)(d) now reads, the circuit clerk no longer issues JDPs; rather, "[t]he Secretary of State shall, upon receiving a court order from the court of venue, issue a JDP." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(d).) Section 6—206.1(B)(d) also provides, in pertinent part:

> "Any submitted court order that contains insufficient data or fails to comply with this Code shall not be utilized for JDP issuance or entered to the driver record but shall be returned to the issuing court indicating why the JDP cannot be so entered. A notice of this action shall also be sent to the JDP petitioner by the Secretary of State." Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(d) (as amended by Pub. Act 84—1394, §5, eff. September 18, 1986).

According to the majority, the Secretary is "intricately involved in the judicial driving permit proceedings held pursuant to section 6—206.1." (129 Ill. 2d at 93.) The Secretary argues that he seeks to appeal an order "to vindicate and protect important interests of the people of this State and to conscientiously discharge a role that was contemplated by the legislature, as demonstrated by its inclusion of the Secretary in the JDP process."

My reading of section 6—206.1 leads me to the conclusion that no such intricate involvement on the part of the Secretary in a JDP proceeding under section 6—206.1(B)(d) was intended by the legislature. I do not agree that the legislature intended to vest the Secretary with the authority to review the substantive determination by a circuit court to order a JDP in a proceeding held pursuant to section 6—206.1.

Comments made during the House of Representatives' debate on the amendment of section 6—206.1 support this conclusion.

"[Representative] Cullerton: *** [A]ny JDP which contains insufficient data or does not comply with the law cannot be entered into the driver's file; further stipulates that the Secretary of State must return the document to the issuing court with a copy to the effected driver. It says, that beginning January 1, 1987, instead of the courts issuing the JDP document itself, they will merely issue a court order directing the Secretary of State to issue the JDP. So, the JDP will actually be issued by the Secretary of State pursuant to that court order.

\* \* \*

[Representative] Cullerton: *** If the Judge orders that it be given, under this Amendment, we're saying that the Secretary of State will actually issue it.

\* \* \*

[Representative] Cullerton: *** [I]t doesn't require a hearing at the Secretary of State, it's just a paperwork. It's just a matter of the court order being received by the Secretary of State. They enter it on the computer and they send... and they send back the judicial driving permit." 84th Ill. Gen. Assem., House Proceedings, June 25, 1986, at 42-44 (statements of Representative Cullerton).

During the debate, the following discussion was had:

"[Representative] Homer: *** [T]he portion that deals with the authority to grant a judicial driving permit, under current law, the court now, as a result of legislation we passed last year, the Judge has the authority to off...

to grant a judicial driving permit to a DUI offender who has been suspended. What the Bill now in its final form would do, as I understand it, would be to say that the Judge retains the right to make that determination, but that the Secretary of State would be ordered to grant the permit when the Judge has so indicated. Is that the...

[Representative] Cullerton: Right. *** It changes 'authorize' to 'directed.' So, in other words ... instead of ... we're not authorizing the Secretary of State to issue a JDP. We are directing him through court order to issue the JDP.

[Representative] Homer: Okay.

[Representative] Cullerton: The reason for the ... and the Secretary of State's Office agrees with this Amendment because they did not want to act as an Appellate Court to the trial Judge who issues a [judicial] driving permit. They just wanted to have a better handle in their computer as to who it is that has a JDP and who doesn't. And so, they wanted to be the ones to actually issue it, but it's only for that purpose.

[Representative] Homer: Okay. The ... But the Amendment analysis that we do have indicates that ... that Amendment #1 removed the authority of a Judge to grant JDPs, but you're saying Amendment 3 put ... put that authority back.

[Representative] Cullerton: Well, the Judges still have the authority to grant the judicial driving permit. That's why it's called the judicial driving permit. They still have that authority. It's not going back to the Secretary of State. That was, as you know, the major portion of the Bill that we passed last year. *** [T]he only purpose of this change is to say, that when a Judge issues a judicial driving permit, he notifies and directs the Secretary of State to actually issue it. The Judge orders it to be issued by the Secretary of State." 84th Ill. Gen. Assem., House Proceedings, June 25, 1986, at 47-48 (statements of Representatives Homer & Cullerton).

Representative Cullerton also noted that:

"[W]e have had an extensive debate on which indicates and reflects an agreement between the Secretary of

State's Office and the Chicago Bar Association Committee on Traffic. And for those reasons, I would appreciate your support and send this Bill to the Governor." 84th Ill. Gen. Assem., House Proceedings, June 25, 1986, at 49 (statements of Representative Cullerton).

In an article entitled *Application of the Illinois Summary Suspension Law & Constitutional Implications*, author Larry A. Davis noted that, "As originally proposed, summary suspension hearings were to be conducted as administrative hearings by the Office of the Secretary of State. Relief from an order of suspension, in the form of a hardship license, was only to be granted by the secretary of state." (Davis, *Application of the Illinois Summary Suspension Law & Constitutional Implications*, 76 Ill. B.J. 494, 494 (1988).) Mr. Davis, a member of the Chicago Bar Association Traffic Committee, participated as one of the representatives of the Chicago Bar Association in negotiations with the office of the Secretary of State concerning the summary suspension law. Mr. Davis also stated:

"Concern over that office's [the Secretary of State] ability to conduct prompt administrative hearings resulted in an agreement [between the office of the Secretary of State and members of the Chicago Bar Association] to amend the proposed legislation to provide that all hearings, both petitions for rescission of suspensions as well as petitions for hardship relief from suspensions, were to be conducted by the circuit court.

To reach that point, it was necessary to reconsider the historical concept of the licensing of drivers in Illinois. In the past, suspension or revocation of driving privileges, as well as the granting of hardship relief to individuals whose licenses had been suspended or revoked, has been an exclusive function of the Office of the Secretary of State. The only route of appeal from an adverse decision of that office was under the Administrative Review Act.

Under the Illinois summary suspension laws, this is no longer the case. Summary suspension is now a *judicial withdrawal* of driving privileges by the circuit court and the consideration of hardship relief from such a suspension is, similarly, an exclusive function of the circuit court. Under this statutory scheme, the secretary of state acts primarily as a record keeper entering suspensions on drivers' records, issuing hardship licenses as ordered by the courts and processing reinstatement fees and orders." (Emphasis in original.) 76 Ill. B.J. at 495-96.

I conclude that the legislature did not intend to vest the Secretary with power to review the exercise of judicial discretion by a circuit court which results in a court order directing the Secretary to issue a JDP. If that were the intention of the legislature, however, I would consider the vesting of such power in the Secretary to be a violation of the doctrine of separation of powers.

The separation of powers clause of our constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) The doctrine of separation of powers does not mandate the division of powers into "rigidly separated compartments." (*In re Estate of Barker* (1976), 63 Ill. 2d 113, 119.) Neither does the doctrine "forbid every exercise of functions by one branch of government that is conventionally exercised by another." (*People v. Inghram* (1987), 118 Ill. 2d 140, 148.) That one branch of the government is not inexorably precluded from exercising powers which could also have been given to another branch of the government does not mean, however, that the executive branch may share concurrent authority with the judicial branch in the determination of who is and who is not to receive a JDP pursuant to section 6—206.1.

This court has previously been faced with the issue whether "section 6—206.1 violates the doctrine of sepa-

ration of powers, because it improperly grants the Secretary authority to review a circuit court's decision to issue a JDP," but declined to address the issue because the proponent of the argument lacked standing. (*People v. Esposito* (1988), 121 Ill. 2d 491, 512.) This court has upheld the constitutionality of other sections of the statutory summary suspension scheme against the challenge that such sections violated the doctrine of separation of powers.

In *People v. O'Donnell* (1987), 116 Ill. 2d 517, this court rejected the argument that section 6—208.1(c) (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208.1(c)) violated the doctrine of separation of powers because section 6—208.1(c) directed that reinstatement fees be paid to the circuit court and then forwarded to the Secretary of State. The circuit court, in holding section 6—208.1(c) unconstitutional, stated that the collection of fees was a ministerial function, and was not a proper matter for the judiciary. The *O'Donnell* court did "not consider the collection of reinstatement fees to be an 'essential power' belonging exclusively to one branch \*\*\*. Rather, the reinstatement procedure calls for the judicial and executive branches to cooperate for the sake of administrative convenience. Such an arrangement is not prohibited by the constitution." *O'Donnell*, 116 Ill. 2d at 528.

In *People v. Inghram* (1987), 118 Ill. 2d 140, this court held the authorization of the circuit court, pursuant to section 6—206.1 (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1), to issue JDPs was not an unconstitutional delegation of executive power to the judiciary. (*Inghram*, 118 Ill. 2d at 150.) The circuit court in *Inghram* had concluded: "[S]ection 6—206.1 improperly gives circuit courts a power over the issuance of hardship licenses that the Secretary already possesses." *Inghram*, 118 Ill. 2d at 150.

This court, in upholding the constitutionality of section 6—206.1, stated: "The General Assembly apparently concluded that it was preferable that the determination of whether a first-time offender whose license has been suspended for DUI can responsibly exercise limited driving privileges for necessary activities should be made in a judicial hearing rather than in an administrative proceeding." (*Inghram*, 118 Ill. 2d at 150.) Additionally, the court in *Inghram*, after noting that the "revocation" of license referred to in section 6—205(c) (Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(c)) differed from the "statutory summary suspension" contemplated in section 6—206.1, concluded: "Both sections provide a type of hardship license but by different authorities under different circumstances. We do not perceive this as presenting a separation of powers violation." *Inghram*, 118 Ill. 2d at 152.

The argument that granting the judiciary the power to rescind statutory summary suspension under section 2—118.1(b) (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b)) violated the doctrine of separation of powers because the rescission of driving privileges had been statutorily vested in the Secretary of State was rejected by the court in *People v. Hamilton* (1987), 118 Ill. 2d 153. The court in *Hamilton* noted that the Secretary's traditional authority in the area of licensing was established by statute, and the legislature could reasonably choose to diminish the scope of that authority. *Hamilton*, 118 Ill. 2d at 162.

The doctrine of separation of powers "only comes into play when one branch of the government seeks to exert a substantial power belonging to another branch, or when the exercise of a function of another branch of government detracts from the performance of essential judicial activities." (*Hamilton*, 118 Ill. 2d at 162.) The *Hamilton* court did not find that an "essential function

of the Secretary of State's office ha[d] been transferred to the judiciary," and concluded that there was no violation of the doctrine of separation of powers on that basis. *Hamilton*, 118 Ill. 2d at 162.

I consider it to be an essential judicial function, at a hearing pursuant to section 6—206.1, for the circuit court to determine whether or not a first offender may receive a JDP. To the extent that section 6—206.1(B)(d) is construed as granting authority to the Secretary to review the substantive judicial determination whether a petitioner is to be issued a JDP, that construction is unconstitutional as a violation of the doctrine of the separation of powers. Such authority on the part of the Secretary to review court orders does not merely require 'the judicial and executive branches to cooperate for the sake of administrative convenience." (*O'Donnell*, 116 Ill. 2d at 528.) Such authority on the part of the Secretary would stem directly from section 6—206.1, the same statute which vests the circuit court with jurisdiction to determine who, according to the Code, is eligible to receive a JDP. Such authority on the part of the Secretary to review a JDP order "confer[s] powers to one branch of government [the Secretary] which properly should be exercised by another branch [the circuit court]" and violates the doctrine of the separation of powers. (See *Inghram*, 118 Ill. 2d at 146, 147.) Moreover, requiring the Secretary to review the court order would be requiring the Secretary to "exert a substantial power belonging to another branch" and would be unconstitutional. *Hamilton*, 118 Ill. 2d at 162.

In each of these consolidated cases, the Secretary disagrees with the determination of the circuit courts that a JDP should be issued. Presumably the Secretary disagrees with the circuit court because the Secretary has concluded the court order "fails to comply with this Code." The Secretary has reached the conclusion that

the circuit court has either (1) failed to exercise the discretion placed with the circuit court in JDP proceedings in a manner consistent with the Secretary's interpretation of the Code, or (2) attempted to exercise jurisdiction over nonfirst offenders.

It has been noted that the authority to grant JDPs and restricted driving permits stems from neither the constitution nor the common law; rather, the authority is granted by statute. (*Hamilton*, 118 Ill. 2d at 162.) The legislature has determined the jurisdiction to grant JDPs to first offenders shall lie in the circuit courts. The circuit court does not have jurisdiction over non-first-time offenders. When a judgment is entered by a court which does not have jurisdiction over the parties or the subject matter, or lacks "the inherent power to make or enter the particular order involved," that judgment is void. (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112.) A void order may be attacked at any time or in any court, either directly or collaterally. *People v. Wade* (1987), 116 Ill. 2d 1, 5; *Barnard v. Michael* (1945), 392 Ill. 130, 135.

There is nothing to prevent the Secretary from petitioning a circuit court for leave to intervene after the Secretary receives the order directing him to issue a JDP and moving the circuit court to vacate the order on the ground that the circuit court was without jurisdiction to enter the order. (Ill. Rev. Stat. 1987, ch. 110, par. 2–408(a)(2).) If the circuit court does not allow the Secretary's petition to intervene, the Secretary could, as a party, appeal that decision. If the circuit court allows the Secretary's petition to intervene, and agrees with the Secretary's argument that the circuit court was without jurisdiction to issue a JDP, then the circuit court could vacate its order, making appeal by the Secretary unnecessary. If the circuit court rejects the Secretary's argu-

ment that the circuit court is without jurisdiction and refuses to vacate the order, the Secretary could then, as a party, appeal the decision. This would place the issue of whether a petitioner is a first offender (thus potentially eligible to receive a JDP) or a nonfirst offender (thus not eligible to receive a JDP) before a reviewing court. This would be done, however, not under the guise of nonparty appellant status, but pursuant to recognized procedure of one attempting to intervene in a matter which has resulted in an order directing him to act, or as one who asserts that an order of the court is beyond its statutory authority, and is, for that reason, void.

The majority states that the Secretary will have nonparty appellant status, entitling him to proceed directly to the appellate court, to "insure that the Illinois Vehicle Code, and, more specifically, that the JDP and hardship license provisions, are properly and uniformly applied throughout the State." (129 Ill. 2d at 101.) Further, the majority states that under section 6—206.1(B)(d), the Secretary has the duty to "review the court order and his records to insure that the driver is entitled to a JDP, and that the order is in conformance with the law." 129 Ill. 2d at 98.

According to the majority, the Secretary has standing to appeal, as a nonparty appellant, any exercise of judicial discretion by a circuit court in granting first-time offenders JDPs with which the Secretary disagrees. If the Secretary disagrees with a judicial determination that a person is likely to obey the limited provisions of the JDP, he would have standing to appeal the JDP order directly to the appellate court. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(b)(5).) If the Secretary disagrees with a judicial determination that a person must drive to secure medical treatment for a family member, he would have standing to appeal a JDP order directly to the appellate court. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—

206.1(B)(b)(2).) If the Secretary is not satisfied, after considering the results of a current professional evaluation of the person's alcohol or other drug use, that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare, he would have standing to appeal directly to the appellate court. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1(B)(a)(3)(i).) If the Secretary concludes the circuit court has failed to properly exercise its discretion in determining any of the above factors, or any other factor of section 6—206.1, then the Secretary will have concluded that the judicial order directing him to issue a JDP "fails to comply with [the] Code," and as such, the Secretary will have standing to appeal the order directly to the appellate court.

I do not agree that the legislature intended this result when it amended section 6—206.1 by Public Act 84—1394. According to Representative Cullerton, the amendment resulted from negotiations which included a representative from the Secretary of State's office, representatives from the Chicago Bar Association's Committee on Traffic, and legislators. It was explained during the debate on the amendment to section 6—206.1 that the Secretary "did not want to act as an Appellate Court to the trial judge who issues a [judicial] driving permit." (84th Ill. Gen. Assem., House Proceedings, June 25, 1986, at 47 (statement of Representative Cullerton).) I conclude that a construction of section 6—206.1(B)(d) which allows the Secretary of State standing as a nonparty to appeal a judicial order directing him to issue a JDP any time the Secretary does not agree with the order is unconstitutional in that it violates the doctrine of the separation of powers.

"A statute should be interpreted so as to avoid a construction which would raise doubts as to its validity." (*Morton Grove Park District v. American National*

*Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363.) I therefore dissent from the holding of the majority that the Secretary has standing to appeal, as a nonparty appellant, a judicial order directing him to issue a JDP.

CLARK and STAMOS, JJ., join in this dissent.