*In re* O.H., L.M., B.M., B.L., Minors (The People of the State of Illinois, Petitioner-Appellee, v. The Department of Children and Family Services, Respondent-Appellant).

Third District    Nos. 3—01—0126, 3—01—0127, 3—01—0316, 3—01—0386 cons.

Opinion filed April 18, 2002.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Janon E. Fabiano (argued), Assistant Attorney General, of counsel), for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert Agostinelli and Sherry Silvern (argued), both of State Appellate Defender's Office, of Ottawa, for appellee B.M.

JUSTICE McDADE delivered the opinion of the court:

In these consolidated cases, the trial court found O.H., L.M., B.M. and B.L., all of whom are minors, delinquent and made them wards of the court. Following separate sentencing hearings, the trial court sentenced each to a term of probation and ordered each to complete his or her placement at a residential facility to be designated by the Department of Children and Family Services (DCFS). DCFS now appeals those orders, claiming the court was without jurisdiction to require such placements. We affirm.

## FACTS

In separate delinquency proceedings, O.H. was convicted of retail theft and residential burglary; L.M. was adjudicated delinquent for the offense of resisting a peace officer; B.M. was convicted of burglary; and B.L. was found delinquent for violating his probation terms by testing positive for cannabis. In each case, the court appointed DCFS as guardian, sentenced the minor to a term of probation, and directed DCFS to place each in a residential facility.

Following the entry of the circuit court's orders, DCFS filed a motion in each case to vacate the court's probation order asserting that the court lacked subject matter jurisdiction. All of the motions were denied.

DCFS appeals the circuit court's orders in all four of the aforementioned cases. The appeals have been consolidated for the purposes of deciding whether a trial court has subject matter jurisdiction to direct a delinquent ward's placement after it has appointed DCFS as the ward's guardian. We find that it does.

## ANALYSIS

### Appellate Jurisdiction

The State begins by asserting that this matter must be dismissed for want of appellate jurisdiction. DCFS' appeal was filed pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301), which provides for appeals from final judgments in civil matters. The State maintains that this appeal is a criminal matter falling within the ambit of Rule 604 (188 Ill. 2d R. 604) and interprets that rule to mean that only defendants and the State possess standing to appeal. Because DCFS was neither, the State submits that DCFS lacked the requisite standing to raise its claim.

■ We review questions concerning rule construction *de novo. In re Estate of Rennick*, 181 Ill. 2d 395, 692 N.E.2d 1150 (1998).

■ We agree with the State that this appeal is a criminal matter. Rule 660(a) states that, unless otherwise specifically provided, appeals

from final judgments in delinquent minor proceedings will be governed by the rules applicable to criminal cases. 134 Ill. 2d R. 660(a). Here, all the minors involved were adjudicated delinquent by the trial court, and the sentencing orders from which these appeals were taken are final.

   However, our jurisdiction to hear this matter does not derive solely from a party's invocation of the correct supreme court rule. Pursuant to Rule 603, our appellate jurisdiction has arisen because an appeal has been taken in a criminal matter. Rule 603 specifically directs all appeals in criminal cases, other than where a statute has been held invalid or where a death sentence has been imposed, be taken to the appellate court. 134 Ill. 2d R. 603; *In re J.R.*, 307 Ill. App. 3d 175, 717 N.E.2d 468 (1999). Because those exceptions do not apply in these cases and because the State has not been prejudiced by DCFS's selection of Rule 301 rather than Rule 604, we hold that appellate jurisdiction has been properly invoked.

   Contrary to the State's contention, Rule 604 does not limit standing to defendants and the State. Although that rule deals with criminal appeals, it is not a comprehensive rule designed to govern the entirety of all criminal appeals. The rule is entitled "Appeals from Certain Judgments and Orders," and its purpose is to set out appeal rules that defendants and the State must follow in designated situations. 188 Ill. 2d R. 604. It does not address appeals filed by nonparties.

   There is common law support for the fact that nonparties in criminal matters also have standing, so long as they hold a direct, immediate and substantial interest in the subject matter that would be prejudiced by the judgment or benefitted by its reversal. *People v. Pine*, 129 Ill. 2d 88, 542 N.E.2d 711 (1989) (the Secretary of State, a nonparty, possessed standing to appeal the trial court's order directing it to issue a judicial driving permit for defendant because, pursuant to section 6—206.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1), it held a direct, immediate and substantial interest in the order's requirements); see *People v. White*, 165 Ill. App. 3d 249, 518 N.E.2d 1262 (1988) (the nonparty Illinois Department of Mental Health and Developmental Disabilities possessed standing to appeal because it had a direct, immediate and substantial interest in the terms of defendant's conditional release order; the Department could be held in contempt by the circuit court if the Department failed to comply with the portions of the court's order that were directed to it).

   Here, we find that DCFS has standing to appeal the portions of the court's orders pertaining to it because it had a sufficient direct,

immediate and substantial interest in the orders' terms. The order required DCFS to assume the responsibility of placing the minors in an appropriate residential facility, and its compliance could be enforced by the trial court's contempt power.

We find that DCFS has standing to appeal from the orders at issue and that this court has jurisdiction to decide that appeal.

### Subject Matter Jurisdiction in Juvenile Court Act Delinquency Proceedings

■ DCFS contends that the trial court did not have subject matter jurisdiction to designate placements for the wards. Subject matter jurisdiction refers to the power of the court to address and resolve the general question involved, including the power to grant the particular relief requested. *In re M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702 (1993). DCFS maintains that there are no provisions within the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1—1 *et seq.* (West 2000)) that empower a trial court to direct a court-appointed guardian to make specific placements or provide specific services. Rather, DCFS asserts that in delinquency proceedings, the power to determine the appropriate placements and services for a ward is restricted to the court-appointed guardian.

■ The standard of review for the construction of a statute is *de novo. Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill. 2d 540, 702 N.E.2d 563 (1998).

■ Where the legislature enacts a comprehensive statutory scheme, creating rights and duties that have no counterpart in common law or equity, the legislature has created a "justiciable matter." "Once the right is created, it is by reason of our constitution that our circuit courts acquire power to adjudge concerning that right. However, it is by reason of the statute that the justiciable matter exists." *M.M.*, 156 Ill. 2d at 65, 619 N.E.2d at 709.

■ The legislature may define the justiciable matter in such a way as to preclude or limit the authority of the circuit court. When a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction, and courts exercising jurisdiction over such matters must proceed within the strictures of the statute. *M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702.

■ Juvenile court proceedings qualify as special statutory proceedings. The scope and application of the Juvenile Court Act itself are defined solely by the legislature. *M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702.

■ Here, contrary to the contentions of DCFS, the delinquency section of the Juvenile Court Act specifically grants a circuit court the power to order specific placements for a ward of the State as a condi-

tion of probation even though a guardian or legal custodian has been appointed.

Section 5—620 (705 ILCS 405/5—620 (West 2000)) gives the court the power to determine whether the minor is guilty and, if so, whether he or she should be made a ward of the court. That section also provides for a sentencing hearing.

The court's sentencing options "in respect to wards of the court" are set out in section 5—710 and they include, in relevant part:

"(a) ***

(i) put on probation or conditional discharge and released to his or her parents, guardian or legal custodian ***[or]

* * *

(iv) placed in the guardianship of the Department of Children and Family Services[.]" 705 ILCS 405/5—710 (West 2000).

The clear import of this section is that DCFS is an eligible guardian and that the guilty minor can be put on probation and released to DCFS as guardian.

Finally, section 5—715(2) lists the rights of the court when placing a minor on probation. In enumerating the conditions of probation that the court may impose, the statute expressly provides:

"§ 5—715. Probation.

***

(2) The court may as a condition of probation or of conditional discharge require that the minor:

* * *

(e) attend or reside in a facility established for the instruction or residence of persons on probation[.]" 705 ILCS 405/5—715(2)(e) (West 2000).

It thus appears to this court that the delinquency portion of the Juvenile Court Act expressly authorizes the court to declare a minor a ward of the court, place him or her on probation, establish specific conditions of probation, and release him or her to a parent, guardian, or legal custodian. There is nothing in the language of the statute that arrests the imposition or prohibits the enforcement of the conditions of probation just because the minor has been released to the applicable custodian. Indeed, when one looks at the various conditions (such as: not violate any criminal statute or work or pursue a course of study or undergo medical or psychiatric treatment or serve a term of home confinement), it would make no sense to hold them inapplicable just because a guardian has been appointed.

Thus, we find that the trial court had jurisdiction to enter its orders. The statute expressly empowers a circuit court to order a specific type of placement for minors who are adjudged delinquents

and made wards of the court, regardless of whether a legal custodian has been appointed.

Moreover, the legislature, in selecting the form of the delinquency provisions, has revealed in another way its intent that the court be able to direct specific placement for delinquent wards. *The inclusion of one is the exclusion of another*, a generally accepted canon of construction, construes the express inclusion of a provision in one part of a statute and its omission in a parallel section as an intentional exclusion from the latter. *Schanowitz v. State Farm Mutual Automobile Insurance Co.*, 299 Ill. App. 3d 843, 702 N.E.2d 629 (1998). The statutory language that concerns *abused, neglected or dependent* minors expressly prohibits the trial court from ordering a specific placement. 705 ILCS 405/2—23(3) (West 2000). However, the parallel provision discussing the disposition of *delinquent* minors does not contain this limiting language or any other language that prohibits the court from ordering a specific placement. See 705 ILCS 405/5—23 (West 2000). See also *In re D.D.*, 312 Ill. App. 3d 806, 728 N.E.2d 119 (2000) (as a matter of law, trial courts possess the authority to determine the proper disposition of a delinquent, and nothing in the Juvenile Court Act specifically restrains it from making specific placements).

Furthermore, even if the Juvenile Court Act did not create the power to regulate the placements of its wards, a trial court still would not be stripped of such power. The circuit court, through the doctrine of *parens patriae*, has an inherent plenary power, independent of any authority given to it by the legislature, to act solely in the best interests of the child and for his own protection. *In re A Minor*, 205 Ill. App. 3d 480, 563 N.E.2d 1069 (1990). It is not a justiciable matter because the authority does not derive from statute. The court's power to interfere with and control the persons and custody of all minors within its jurisdiction existed in the common law, prior to and independent of the Juvenile Court Act, by inheritance from the English courts of chancery. *M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702.

DCFS cites *In re Chiara C.*, 279 Ill. App. 3d 761, 665 N.E.2d 404 (1996), and *In re T.L.C.*, 285 Ill. App. 3d 922, 675 N.E.2d 228 (1996), in support of its argument that the Juvenile Court Act does not give trial courts the jurisdiction to place minors where the court has already appointed a guardian. Both cases cite to section 2—28(2), which states that the court, unless specifically authorized by law, is not empowered to order specific services or service providers. 705 ILCS 405/2—28(2) (West 2000).

Neither case is relevant in the matter at hand because they both deal with minors who had been adjudged abused, neglected or dependent. However, as we have previously noted, this case involves a

different section of the Juvenile Court Act dealing with minors who have been adjudicated delinquent. As we have previously discussed, in delinquency proceedings, the Juvenile Court Act specifically provides that the court has the authority to direct placements for its wards.

Thus, we find that the trial court has subject matter jurisdiction to direct the kind of placement for delinquent wards, regardless of whether a guardian has already been appointed. Accordingly, we affirm the trial court's orders in each of the consolidated cases.

## CONCLUSION

In light of the foregoing analysis, we affirm all of the trial court's orders.

Affirmed.

LYTTON, P.J., and HOLDRIDGE, J., concur.