[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO MODIFY SUPPORT AND ALIMONY P.J. DATED JULY 28, 1998 AND THE PLAINTIFF'S MOTION TO TERMINATE ALIMONY, DATED JANUARY 8, 1999
This matter first came to the Court pursuant to summons and complaint dated May 24, 1996 and returnable June 11, 1996 seeking a dissolution of marriage, joint custody of the minor child and such other relief as was fair and equitable.
Counsel appeared for both parties.
An answer and cross complaint dated June 27, 1996 was filed on July 1, 1996.
Various motions were filed and heard by the Court.
On June 10, 1997 the Court, Solomon, J., rendered judgment after a hearing.
The Court first addresses the plaintiff's motion to terminate alimony, dated January 8, 1999.
The said motion read in part as follows:
 "1. On or about June 10, 1997 the parties were granted a dissolution of marriage.
 2. The plaintiff was ordered to pay alimony and said alimony shall be either terminable or modifiable as the Court may choose in the event of the defendant cohabiting within the meaning of C.G.S. § 46b-86b.
 Wherefore the Defendant is cohabitating the plaintiff requests that the alimony be terminated . . ."
That portion of the judgment that is applicable to the motion reads as follows:
". . . . and the plaintiff is ordered to pay the defendant the sum of $65.00 per week for a period of eight (8) years. Said amount is nonmodifiable as to term and terminates upon the death of either party, the defendant's remarriage or her cohabitation with an unrelated male."
C.G.S. § 46b-86b reads as follows:
(b) In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or CT Page 5976 wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, may, its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party.
The parties appeared before the Court with their respective counsel and were heard as to both of the aforementioned motions on April 29, 1999 and April 30, 1999.
From the testimony of the parties and the exhibits, the Courtmakes the following findings of fact.
The defendant no longer works for the Inn at Chester but is presently employed by the Town of Groton Board of Education.
Mr. Richard E. Love is a builder, he built the residence in which the defendant presently resides at 12 Hatchett's Hill Road, Old Lyme.
The defendant moved into the Hatchett's Hill residence in November of 1998.
The defendant's occupancy is pursuant to a written lease by and between Richard Love of Old Lyme as lessor and Jane Farley, the defendant, as lessee. The lease covers the period August 16, 1998 to August 15, 1999 at a monthly rental of $800.00.
See Defendant's Exhibit 16.
According to the testimony, the residence is owned by Love Builders.
The residence is a contemporary home, four bedrooms, bath, a whirlpool facility.
The lease payments are recited as $800.00 monthly, the defendant pays $400.00. CT Page 5977
The Hatchett's Hill residence was allegedly built on speculation.
The former home of the parties at 6 Wildwood Drive in Old Lyme was lost in foreclosure at or near the time of the judgment.
Between the time of the foreclosure of the Wildwood Drive property and the defendant's move into the Hatchett's Road residence, the defendant and the daughter of the parties resided at the home of defendant's family.
When the defendant moved into the Hatchett's Road property, it was not completely finished.
The defendant has kept company with Mr. Richard E. Love for some time dating back to a point in time prior to the Farley divorce.
The defendant acknowledges that she is in love with Richard E. Love.
It is represented that there is no certificate of occupancy for the Hatchett's Road property.
Some time ago the defendant's Saab motor vehicle was in an accident and totaled.
Defendant replaced that vehicle with a 1995 Ford Explorer by a lease arrangement with Mr. Richard E. Love.
The defendant testified that she resides at 12 Hatchett's Road with her daughter Brie and no one else.
The defendant represents that Mr. Richard E. Love resides elsewhere in a condominium.
The defendant acknowledges Richard E. Love is her boyfriend and in her words, "He has asked me to marry him 100 times."
The Court notes the proceedings in the dissolution proceeding of Richard E. Love vs. Diane P. Love, FA96-0538294S and the testimony of Richard E. Love on February 19, 1999 before Solomon, J., in part as follows concerning the issue of Mr. Love's residence as it relates to the defendant, Jane Farley. CT Page 5978
 EXCERPT FROM TESTIMONY OF RICHARD E. LOVE * * *
RICHARD E. LOVE, called as a witness, having been duly sworn, was examined and testified as follows:
 * * *
CROSS-EXAMINATION BY MR. BLANCHARD:
Q Mr. Love, at the beginning of your testimony you indicated that you live at 12 Hatchet Hill Road in Old Lyme, Connecticut, is that correct?
A Yes, it is.
Q Who owns that residence?
A My father owns it.
Q And do you reside there alone?
A No.
Q Who do you reside there with?
A Jane Farley and her daughter, Brie.
Q And does Miss Farley contribute to the household expenses there at 12 Hatchet Hill Road?
A Some portion, yes.
Q How much does she contribute?
A Approximately $400 a month.
Q And you pay the remainder of the expenses there, is that your testimony here today?
A As far as the mortgage and interest go, yes.
Q What is your mortgage payment there? CT Page 5979
A What is it?
Q Yes.
A Right now it's — it hasn't been rolled over from a construction mortgage and it's approximately a thousand dollars, and then there's an equity mortgage on it to complete the house, and that payment is $258.
Q So is it your testimony here today you're paying $1258 a month as your rent there, as your mortgage there?
A Yes.
(Discussion off the record regarding another matter)
 * * *
MR. BLANCHARD: May I proceed, Your Honor, please?
THE COURT: You may proceed.
MR. BLANCHARD: Thank you.
CROSS-EXAMINATION BY MR. BLANCHARD: (Continuing)
Q Your testimony here is that you're paying $1258 per month for the first and second mortgages, is that correct?
A Yes.
Q Can you indicate to The Court then how your sworn financial affidavit dated February 9th, 1999 indicates that you're paying a sum less than about $800 a month?
A That's offset by Miss Farley's payments.
Q So you're including Miss — Miss Farley's contributions toward the mortgage, is that correct?
A I'm deducting them.
Q Okay. So — so it's fair for me to assume then that the 1258, the difference between the amount of the weekly payment of CT Page 5980 the 1258 and amount you claim paid is being paid by Miss Farley, that's your testimony?
A Correct, yes.
Q Does she contribute any other expenses toward the house?
A Generally buys all the groceries.
Q Okay. So she buys all the groceries. Is — withdrawn.
You've listed that your food expense is $150 a week.
A I said generally she buys them.
Q How often is generally, sir?
A Well, she makes an initial trip to the grocery store once a week and then I fill in the rest of the time.
Q So are you — is your expense here for gro — groceries including expenses that you incur on behalf of her and her minor child?
A I would say — it's difficult to say exactly, but a small amount if any.
Q So you expend — your testimony here today is you expend — you expend in excess of a hundred — you spend $150 a week on your own groceries?
A Well, I don't work in the home, I work outside the home and I provide myself with food as well outside of the home.
 * * *
The Defendant suggests that Mr. Richard E. Love's testimony is based on his wish to have this Court terminate her alimony so as to pressure her into being totally financially dependent on him and marry him.
The defendant has recently undergone two operations for a cancer-like condition called endometriosis, that she has had injuries to her colon, and has colitis. CT Page 5981
The defendant says she cannot take antibiotics due to her medical condition.
The defendant attends therapy three to four times a week.
The defendant claims the plaintiff resides in a large house on Mason's Island owned by one of his clients.
The defendant represents the plaintiff has a minimal relationship with the daughter Brie now age 17.
The plaintiff, since the divorce, has again married, in September 1998.
The plaintiff is a certified financial planner.
The defendant is a library technical assistant and earns $10.35 hourly, she is paid for a period of nine months of the year.
The utility service at the Hatchett's Road property is paid for by Richard Love, the telephone is in the defendant's name.
The defendant has medical coverage through her employment at a cost of $28.00 monthly.
The defendant acknowledged that the plaintiff was current in all respects as concerns the orders in the judgment.
Since the dissolution, the plaintiff's financial situation has allowed him to hire a secretary, secure an outside office and furnish the same with artwork and a sound system.
The defendant has affirmed that Richard E. Love has asked her to marry him many times.
The defendant claims that Richard E. Love's testimony in his divorce proceeding is false.
The defendant's physical problems have existed over the last ten years, she represents that a hysterectomy would not solve her medical problems.
The child of the parties is apparently a gifted young lady who visited France last summer, has participated in a program at CT Page 5982 John's Hopkins and has been admitted to a program at Smith College in chemistry and writing.
A substantial debt to the IRS owed by the plaintiff was settled for $14,000.00 after the dissolution.
The child Brie has received educational assistance by way of a grant.
The defendant acknowledged that she and Richard E. Love are not related.
The plaintiff has timely paid the lump sum alimony payments and any required debts.
The plaintiff testified that his ability to settle with the IRS was due to a loan from his present spouse.
The defendant acknowledged that Richard E. Love is deeply in love with her, that she is the center of his dreams and that he believes they are soul mates.
The defendant is age 45.
Richard E. Love is age 46.
Mr. Love's son Ricky has stayed at the Hatchett's Hill Road briefly on occasion.
The defendant on her current financial affidavit shows a debt of $7,000.00, which she acknowledges are monies made available to her by Richard E. Love.
The defendant's financial affidavit reflects the following:
 weekly gross income from her position as a media assistant with the Groton public schools $239.77
 deductions $ 66.00 net $173.77
other income Alimony $ 65.00 Support $125.00 CT Page 5983
Total Net Weekly $363.77
 Claimed weekly expenses $626.74 Debt of $26,832.00 including $14,690.00 attorney's fees and $7,000.00 due to Richard E. Love
Assets:
 a 1994 Ford Explorer with a minus equity of $1,800.00 Essex Savings Bank $ 100.00 Insurance Cash Value $ 300.00
The plaintiffs financial affidavit reflects the following.
 weekly gross income as a financial advisor with American Express Financial Service $818.00
deductions $195.00
including self-employment contribution.
 Claimed weekly expenses $542.00 which includes the current orders of alimony and support and additional support for a child not issue of this union.
 Debt of $47,112.00 (now that the IRS debt has been resolved)
Assets:
 no real estate no motor vehicle
 Savings and checking $1,400.00 Stocks — mutual finds $1,500.00
The defendant strongly professes that Mr. Love does not reside with her and her daughter at 12 Hatchett's Hill Road and, as indicated above, takes the position that his testimony in his divorce is prompted by his desire to have her alimony terminated so as to have her become so dependent on him financially as to prompt a trip to the altar of marriage. CT Page 5984
The Court acknowledges that Mr. Love did not testify in these proceedings.
The Court observes that no witness on behalf of the defendant testified to verify her view of the living arrangements.
The Court is hard-pressed to understand why Mr. Love should have testified falsely mindful of the represented state of love and affection testified to by the defendant.
Mr. Love is providing a new home for the defendant wherein he pays at least half the consideration in the so-called lease and he pays other expenses and charges including utilities and a mortgage of $1,258.00 and some of the groceries.
The defendant and Mr. Love are not related and he is over age 18.
The relationship is not platonic, the residence is not a co-ed dorm nor a convalescent home.
The Court cannot accept the defendant's reasoning as to why Mr. Love would testify falsely.
The Court is also mindful of the duration of the relationship between the defendant and Mr. Love, reference being made to reports in the file prior to the Farley dissolution to the State Police and the finding on the first page of the judgment by Solomon, J. as to the conduct of the defendant contributing to the dissolution.
There is no question in the Court's mind that the financial contributions being made by Mr. Love are substantial and alter the needs of the defendant.
Because of the Court's concern for the medical problems which beset the defendant, the Court will not terminate the alimony, but will reduce the same to $1.00 a year.
The Court has considered the following portions of DeMariavs. DeMaria, 247 Conn. 715, et seq.
The term cohabit was not defined in the dissolution judgment. Therefore, in deciding the defendant's motion to terminate alimony, the trial court was left to CT Page 5985 construe the word. Black's Law Dictionary (6th" Ed. 1990) defines cohabitation as "[t]o live together as man and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations . . ." See Boyd v. Boyd, 228 Cal.App.2d 374, 381, 39 Cal.Rptr. 400 (1964). This court has defined cohabitation to be "a dwelling together of man and woman in the same place in the manner of husband and wife." Wolk v. Wolk, 191 Conn. 328, 332, 464 A.2d 780
(1983). As is readily apparent, the word is not inflexible nor is it one of strict or narrow meaning.
 Section 46b-86(b) does not use the word cohabitation. The legislature instead "chose the broader language of "living with another person' rather than `cohabitation' . . ." Kaplan v. Kaplan, 185 Conn. 42, 45, 440 A.2d 252
(1981), on appeal after remand, 186 Conn. 387, 441 A.2d 629 (1982). Because, however, "living with another" person without financial benefit did not establish sufficient reason to refashion an award of alimony under General Statutes § 46b-81, the legislature imposed the additional requirement that the part making alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of the alimony recipient. Therefore, this additional requirement, in effect, serves as a limitation. Pursuant to § 46b-86(b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony.
There is however some merit to the dissent by Justice McDonald.
As to the motion of the defendant dated July 28, 1998 claiming that there has been a substantial change in circumstances and requesting modification of support and alimony, the Court makes the following findings.
The financial affidavit of the plaintiff filed at the time of the dissolution June 10, 1997 was as follows:
 weekly gross income from American Express Financial Advisors $772.36
deductions CT Page 5986
Est. taxes $26.30
Medical Benefits $177.87
Business Expenses $343.74
Weekly Net $224.45
Claimed weekly expenses $325.00
 Stated debt (which included the then outstanding IRS debt)$101,140.00
 Equity in 6 Wildwood Court $34,000.00 This property was apparently lost in subsequent foreclosure.
1987 BMW vehicle 0 equity
Checking account $400.00
Cash value insurance $1,100.00
The plaintiffs February 10, 1998 financial affidavit reflects:
weekly gross $828.00
deductions $275.84
Net $552.16
Weekly expenses $699.00
 including support shown (includes support for a child not issue of this marriage) $172.00
alimony $161.00
a 1987 BMW motor vehicle 0 equity
Checking account $1825.00
Stock $2730.00 CT Page 5987
Life insurance — cash value $1117.00
See Defendant's Exhibit 10.
The plaintiffs November 14, 1998 financial affidavit reflects:
weekly gross income $835.00
deductions $222.83
Net $612.17
Weekly expenses $585.00
No real estate shown
No motor vehicle shown
Checking account $925.00
Stocks $1025.00
Debt $52,571.00
 includes debt to IRS — $13,000.00 debt to Georgette Page $27,000.00
See Defendant's Exhibit 11.
The plaintiffs February 26, 1999 financial affidavit reflects:
weekly gross $818.00
Net $623.00
Weekly expenses $542.00
 Debt $49,412.00 includes debt to IRS — $ 8,600.00 debt to Judith Farley $10,000.00 debt to Georgette Page $32,000.00
No real estate shown
No motor vehicle shown CT Page 5988
Checking accounts $1,400.00
Stocks $1,500.00
Insurance 0
See Defendant's exhibit 12.
See Defendant's Exhibit 18 for loan agreement between the plaintiff and Judith Wilson.
See Defendant's Exhibit 13 entitled compensation statement from American Express to the plaintiff for the period December 2, 1998 to December 15, 1998, page 3, indicating year to date earnings of $75,167.92.
The plaintiffs April 28, 1999 financial affidavit reflects the same data as on the February 26, 1999 affidavit.
The Defendant's financial affidavit of February 23, 199 reflects:
 weekly gross income from the Groton Public Schools $363.31
deductions $67.38
Net $295.92
Other income alimony support $190.00
Total net $485.92
Weekly expense $626.74
 Debt $88,832.00 (including the IRS debt of $64,000.00 now settled)
Counsel Fees $14,690.00
Richard Love $5,000.00
No real estate
1994 Ford Explorer of $1,800.00 0 equity CT Page 5989
Checking account $100.00
The defendant's financial affidavit of April 28, 1999 reflects:
Weekly gross $239.77
deductions $66.00
Net $173.77
Other income, alimony and support $190.00
Total weekly net $363.77
Weekly expenses $626.74
Including an increased debt to Richard Love $7000.00
Assets the same as in the February 23, 1999 affidavit.
The Court finds that there has been a modest increase in the plaintiff's income since the divorce.
No tax returns were made available to the Court, which would have been of assistance, and the various financial statement exhibits are not easy to interpret and do not apparently factor in the plaintiff's expenses of running his office and expenses incident thereto.
See Defendant's Exhibit 13 referencing the $75,167.92 year to date earnings.
Mindful of the Court's decision modifying the alimony to $1.00 a year and the plaintiff's own admission that his circumstances have improved and that settlement of the IRS debt, the Court finds that there has been a substantial change in the plaintiff's financial circumstances that would allow an increase in the order of support.
The defendant, as concerns the motion to terminate alimony, presumably could have had some friend, family member or co-worker testify to support her claim that Richard E. Love did not reside with her and the minor child, but no such witness appeared. Under the circumstances, the only viable alternative is for the Court CT Page 5990 to proceed on the premise that Richard E. Love has testified falsely in his divorce proceeding.
This the Court is not inclined to do.
Admittedly the defendant's financial circumstances are modest but any objective assessment of her overall financial situation suggests and indicates that Mr. Richard E. Love is, in a very real sense, keeping the financial ship afloat for her.
The Court also is mindful that the minor child Brie is a gifted child intellectually by virtue of her track record and the testimony and an increase in the support order is both financially and morally justified.
The Court modifies the order of support to $170.00 weekly.
Austin, JTR